Forrest BURNHAM, et al., Plaintiffs,

v.

Roy A. WEST, et al., Defendants.

Civ. A. No. 87–0464–R.

United States District Court,
E.D. Virginia,
Richmond Division.

Jan. 29, 1988.

David P. Baugh, Claire G. Cardwell, Richmond, Va., Gerald T. Zerkin, Michael P. Kozak, Zerkin, Heard & Kozak, Richmond, Va. and Kay Ely–Pierce, for plaintiffs.

Frank B. Miller, III, Elizabeth Parrish, Sands, Anderson, Marks & Miller, Richmond, Va., for Harrison–Jones.

James W. Morris, III, Ann Adams Webster, David P. Corrigan, Browder, Russell, Morris & Butcher, Richmond, Va., for other defendants.

## SUPPLEMENTAL OPINION AND ORDER

SPENCER, District Judge.

By order entered December 28, 1987 this Court ruled that although the defendants in this case had conducted unlawful searches, they were entitled to qualified immunity from all damages liability. Plaintiffs' motion to reconsider is now before the Court. Plaintiffs argue in this motion that federal qualified immunity principles do not bar damages liability under their claim pursuant to Va. Code Ann. section 19.2–59 (1983),[1] and that defendants' conduct satisfies the requirements for both compensatory and punitive damages liability under Virginia law. Defendants respond that (1) their federal qualified immunity does shelter them from damages liability under section 19.2–59, (2) sovereign immunity precludes their liability under that statute, or, in the alternative, that (3) this Court should not retain pendent jurisdiction of the question of defendants' state law liability, but should instead dismiss the matter so that it can be taken up in the state courts if plaintiffs are so advised.

Plaintiffs' motion to reconsider will be granted because it raises important legal issues necessary to resolution of this case. The Court having determined, with the agreement of counsel, that oral argument will not be necessary, the matter is now ripe for disposition.

I

Three conditions govern the power to exercise pendent jurisdiction: the case must present a federal claim sufficiently substantial to support jurisdiction, the state and federal claims must at least "derive from a common nucleus of operative fact," and the claims must be of a character that would normally require their adjudication in a single proceeding. *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed. 2d 218 (1966). The federal claim in the case at bar has been found sufficiently substantial to support summary judgment in the plaintiffs' favor, and it derives from exactly the same facts as the state claim. Since section 19.2–59 provides the same protection as the Fourth Amendment, *Carter v. Commonwealth*, 209 Va. 317, 163 S.E.2d 589 (1968), *cert. denied*, 394 U.S. 991, 89 S.Ct. 1479, 22 L.Ed.2d 766 (1969), it is reasonable to expect plaintiffs to try their federal and state claims together. *See generally Eason v. Eason*, 204 Va. 347, 350, 131 S.E.2d 280, 282 (1963) (party may be precluded from litigating issues that could have been tried in an earlier proceeding); *accord Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). This Court has power to exercise pendent jurisdiction over plaintiffs' state law claim. As for the discretionary question whether that power should be exercised in this case, "considerations of judicial economy convenience and fairness to litigants" weigh in favor of such an exercise, *see Gibbs*, 383 U.S. at 726, 86 S.Ct. at 1139, and no other factors weigh against it. As later discussion will show, the issue at hand does not raise unique questions of Virginia law that should be decided by the state courts in the first instance.

---

1. Section 19.2–59 provides, in pertinent part: No officer of the law or any other person shall search any place, thing or person, except by virtue of and under a warrant issued by a proper officer.... Any officer or person violating the provisions of this section shall be liable to any person aggrieved thereby in both compensatory and punitive damages.

Plaintiffs' reliance on the Rules of Decision Act,[2] which requires this Court to apply Virginia law to the issue at hand, does not answer the crucial question: what immunity, if any, is available to defendants under Virginia law? Some state courts have adopted federal principles of qualified immunity,[3] while others have preferred to identify immunity principles in state law and to extend them to modern contexts.[4] Plaintiffs are correct in arguing that this Court's earlier qualified immunity ruling does not dispose of their state law claim, because Virginia has not adopted federal qualified immunity principles as such. Instead, the Supreme Court of Virginia has sought to achieve, under the sovereign immunity rubric, a synthesis of common law immunity principles that will be useful for all the "constantly shifting facts and circumstances" that come before the courts of the Commonwealth. *Messina v. Burden*, 228 Va. 301, 307, 321 S.E.2d 657, 660 (1984). The discussion that follows will examine those principles and explain why and how they apply in the case at bar.

Under Virginia's approach to sovereign immunity, the doctrine is viewed as having developed from being simply a "privilege of sovereignty" into a mainstay of public policy.

> [T]he doctrine of sovereign immunity serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation.

*Messina*, 228 Va. at 308, 321 S.E.2d at 660. The immunity enjoyed by governmental employees[5] is not regarded in Virginia as independent of the immunity held by the Commonwealth itself; instead, the former is the logical and necessary extension of the latter. This conclusion is grounded partly in the agency-related principle that "the State can act only through individuals," *Id.*, 228 Va. at 308, 321 S.E.2d at 661, and partly in the policy-related principle that "[u]nless the protection of the doctrine extends to some of the people who help run the government, the majority of the purposes for the doctrine will remain unaddressed." *Id.*

The immunity afforded to those public servants who are entitled to it is of the same character at all levels of government, but its application at some levels is broader than at others.

> Governors, judges, members of state and local legislative bodies, and other high level government officials have generally been accorded absolute immunity. General agreement breaks down, however, the farther one moves away from the highest levels of government. Nevertheless, on a case-by-case basis, this Court has extended immunity to other government officials of lesser rank.

*Id.* at 309, 321 S.E.2d at 661 (citation omitted). The analysis in such cases is a functional one: "we examine the function [the] employee was performing and the extent of the state's interest and involvement in that function." *James v. Jane*, 282 S.E.2d 864 (1981). Analysis of function and govern-

---

**2.** 28 U.S.C.A. section 1652 (1966).

**3.** *E.g., Breck v. Ulmer*, 745 P.2d 66, 71–72 (Alaska 1987).

**4.** *See, e.g., Breault v. Chairman of Bd. of Fire Comm'rs of Springfield*, 401 Mass. 26, 513 N.E.2d 1277, 1284 (1987) (no immunity for intentional ministerial acts; immunity for discretionary acts within scope of duty performed in good faith); *Acevedo v. Pima County Adult Probation Dept.*, 142 Ariz. 319, 690 P.2d 38, 41 (1984) ("Those officials whose special functions or constitutional status require protection from suit to carry out their duties are accorded absolute immunity").

**5.** This Court chooses where practicable to use the term governmental "employees" rather than "officials" in keeping with the teaching of the Virginia Supreme Court that a public servant's rank is not determinative of his or her entitlement to immunity. *See Messina v. Burden*, 228 Va. 301, 312, 321 S.E.2d 657, 663 (1984); *see also id.* at 314, 321 S.E.2d at 664 (Poff, J., concurring) (using the term "public-servant" immunity, "sometimes imprecisely labeled 'official immunity'").

mental interest should include consideration of "whether the act complained of involved the use of judgment and discretion" and of "the degree of control and direction exercised by the state over the employee." *Messina*, 228 Va. at 313, 321 S.E.2d at 663. Finally, the nature of the allegedly injurious act itself is relevant. Sovereign immunity does not protect a state employee who commits an intentional tort, *Elder v. Holland*, 208 Va. 15, 155 S.E.2d 369 (1967), or a negligent act outside the scope of his or her public duties. *Sayers v. Bullar*, 180 Va. 222, 22 S.E.2d 9 (1942). *See also Fox v. Deese*, 234 Va. 412, 422–425, 362 S.E.2d 699, 705–706 (1987) (stating both of the foregoing propositions).

To summarize for purposes of the case at bar: Virginia's sovereign immunity doctrine provides governmental employees with a margin for error if they meet the doctrine's eligibility requirements. These requirements, stated broadly, are that the employee work for an immune governmental entity, and that the employee exercise judgment and discretion in carrying out his or her duties, or act at the immune employer's express direction, or both. Eligible governmental employees acting within this margin, which encompasses what are referred to generally in the cases as acts of "simple negligence," will not be subjected to liability in damages. Governmental employees in a proper case are afforded immunity, despite the undesirable effects of their immunized mistakes, because the government itself will suffer if its agents fail or refuse to act because they fear the consequences of acting in error. However, where the character of an employee's act takes it outside the scope of that employee's governmental duties, or where the employee acts with wrongful intent, the doctrine affords no protection.

█ In its earlier ruling, having found that the searches at issue in this case violated the Fourth Amendment's reasonableness standard, this Court proceeded to find that the defendants also violated Va. Code Ann. section 19.2–59 (1983). It must now be determined whether the sovereign immunity doctrine can apply to a violation of section 19.2–59.

Section 19.2–59 was originally enacted during Prohibition[6] in response to widespread complaints concerning unreasonable searches. *Durham Bros. & Co. v. Woodson*, 155 Va. 93, 101, 154 S.E. 485, 487 (1930). The statute protects against unreasonable searches and seizures, which are "forbidden by the common law, and by the Fourth Amendment ..., which is but declaratory of the common law on the subject." *McClannan v. Chaplain*, 136 Va. 1, 14, 116 S.E. 495, 498 (1923). At common law, unreasonable searches and seizures were regarded as trespassory torts. *See Steagald v. United States*, 451 U.S. 204, 219, 101 S.Ct. 1642, 1651, 68 L.Ed.2d 38 (1981) (remedy for unreasonable search of dwelling was action in trespass); *accord McClannan*, 136 Va. at 10–11, 154 S.E. at 497. Section 19.2–59 concerns a common law tort that has achieved constitutional dimensions, and the statute specifies the familiar tort law remedy of damages. Sovereign immunity, which is primarily applied to bar damages liability in tort suits, *see, e.g., Elizabeth River Tunnel Dist. v. Beecher*, 202 Va. 452, 117 S.E.2d 685 (1961), applies to actions brought under section 19.2–59.[7]

---

6. 1920 Va. Acts c. 345. The Fourth Amendment's search and seizure provision was not made applicable to the States via the Fourteenth Amendment until much later. *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949).

7. This conclusion is buttressed by the close correspondence between section 19.2–59 and 42 U.S.C. section 1983, which likewise imposes liability for violations of Fourth Amendment rights (as well as other rights protected by the Constitution). Instances of conduct addressed by suits under section 1983, as well as similar suits against federal officials under *Bivens v. Six Unknown Named Fed. Narcotics Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), are sometimes referred to as "constitutional torts." *E.g., General Electric Co. v. United States*, 813 F.2d 1273, 1277 (4th Cir.1987) (*Bivens* action); *Lynch v. Cannatella*, 810 F.2d 1363, 1374 (5th Cir.1987) (section 1983 action). Section 1983, like section 19.2–59, uses "categorical remedial language," *Wood v. Strickland*, 420 U.S. 308, 322, 95 S.Ct. 992, 1000, 43 L.Ed.2d 214 (1975), but the cause of action it provides is nevertheless subject to the plea of immunity.

█ Only acts of simple negligence are protected under Virginia's sovereign immunity doctrine. Simple negligence is failure to conform to a certain standard of conduct resulting in injury to the interest of another. *See James,* 282 S.E.2d at 869; W. Keeton, ed., *Prosser & Keeton on the Law of Torts* section 30 at 164–65 (5th ed. 1984). In a section 1983 immunity case arising in the school setting, the constitutional standard of conduct was stated, in the negative, as follows.

> [I]n the specific context of school discipline, we hold that a school board member is not immune from liability for damages under section 1983 if he knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the student affected, or if he took the action with the malicious intention to cause a deprivation of constitutional rights or other injury to the student.

*Wood v. Strickland,* 420 U.S. 308, 322, 95 S.Ct. 992, 1001, 43 L.Ed.2d 214 (1975).[8] Under this standard of conduct, educators are not expected to predict the future of constitutional law in order to avoid damages liability.

> Liability for damages for every action which is found subsequently to have been violative of a student's constitutional rights and to have caused compensable injury would unfairly impose upon the school decisionmaker the burden of mistakes made in good faith in the course of exercising his discretion within the scope of his official duties.

*Wood,* 420 U.S. at 319, 95 S.Ct. at 999.

Section 19.2–59 has been consistently held to provide only the same protection as that afforded by the Fourth Amendment. *E.g., Thims v. Commonwealth,* 218 Va. 85, 235 S.E.2d 443 (1977); *Carter v. Commonwealth; One 1963 Chevrolet Pickup Truck v. Commonwealth,* 208 Va. 506, 508, 158 S.E.2d 755, 757, *cert. denied,* 391 U.S. 964, 88 S.Ct. 2032, 20 L.Ed.2d 877 (1968). Only the constitutional standard of conduct, therefore, should apply for purposes of determining sovereign immunity in actions brought under section 19.2–59. The school principal and teachers in this case cannot be said to have violated the applicable standard of conduct, and thus to have taken themselves outside the protected zone of sovereign immunity, unless it is shown that they can be charged with knowledge of settled, indisputable law forbidding their actions. Because plaintiffs have not adequately shown that defendants knew or should have known that their searches would violate the constitutional rights of the students they searched,[9] or that the purposes of the searches were outside defendants' disciplinary responsibilities, or that defendants undertook the searches with malicious intent, this Court holds that defendants' actions were within the "simple negligence" concept of Virginia's sovereign immunity doctrine, even though those actions violated section 19.2–59.

The defendants in the case at bar qualify in all other respects for sovereign immunity under Virginia law. Their employer, a school board, is an immune governmental entity. *Kellam v. School Board,* 202 Va. 252, 117 S.E.2d 96 (1960). Maintenance of order in the schools is a basic function of teachers and administrators, and one in which the Commonwealth's interest and involvement is substantial. *See New Jersey v. T.L.O.,* 469 U.S. 325, 341, 105 S.Ct. 733, 742, 83 L.Ed.2d 720 (1985). The other two factors identified in *Messina*—the judgment and discretion delegated to the employee and the degree of control and direction exercised by the state over the em-

---

**8.** This standard was later modified, for purposes of summary judgment as to federal issues, to exclude inquiry into the subjective good faith of government employees. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

**9.** Here the Court, upon reconsideration, intentionally sweeps more broadly than in its earlier ruling on whether defendants violated "clearly established" constitutional rights. If there are means to show that rights are clearly established other than by controlling precedent as required by *Wallace v. King,* 626 F.2d 1157 (4th Cir.1980), *cert. denied,* 451 U.S. 969, 101 S.Ct. 2045, 68 L.Ed.2d 348 (1981), plaintiffs have not found them.

ployee—also support the immunity of these defendants. A school principal has considerable discretion to formulate responses to situations that threaten school order. *See Banks v. Sellers*, 224 Va. 168, 294 S.E.2d 862 (1982) (principal entitled to immunity); *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503, 507, 89 S.Ct. 733, 737, 21 L.Ed. 731 (1969). The circumstances of a teacher, who is subordinate to the school principal but possessed of a measure of discretion for the purpose of maintaining a proper learning environment in the classroom,[10] are similar to those of the surgical intern in *Lawhorne v. Harlan*, 214 Va. 405, 200 S.E.2d 569 (1973). In *Lawhorne*, sovereign immunity was found to extend to state hospital administrators acting within the range of their discretionary powers. This protection was found also to extend to a surgical intern, even though his discretion in carrying out governmental purposes was narrower than that of the administrators. The extent to which the intern's function was circumscribed by his employee relationship to the state—"the degree of control and direction exercised by the state over the employee" —was an important factor in determining that he was entitled to claim sovereign immunity. *See id.* at 407–408, 200 S.E.2d at 572. "It would be an unwise policy to permit agents and employees of the State to be sued in their personal capacity for acts done by them at the express direction of the State, unless they depart from that direction." *Sayers*, 180 Va. at 229, 22 S.E. 2d at 12. In the case at bar, the principal expressly directed the teachers to carry out the searches at issue.

Plaintiffs argue that teachers do not partake of immunity under state law even for acts of simple negligence. This argument is not without foundation in earlier cases, *see Crabbe v. County School Bd. of Nor-*

*thumberland County*, 209 Va. 356, 359, 164 S.E.2d 639, 641 (1968), and at least two Justices of the Virginia Supreme Court have perceived an inconsistency in Virginia law with respect to this issue. *Messina*, 228 Va. at 316–17, 321 S.E.2d at 665–66 (Cochran, J., dissenting, joined by Stephenson, J.). However, the *Messina* majority was not deterred by any such apparent inconsistency. "The more workable rule is the one here announced: if an individual works for an immune governmental entity then, in a proper case, that individual will be eligible for the protection afforded by the doctrine." *Id.* at 312, 321 S.E.2d at 663. This Court need not decide whether this clear language implicitly overrules the pertinent aspect of *Crabbe* and similar cases, or stands instead for the view that the employees in those cases were not acting within the scope of their employment with respect to the acts complained of. Under the rule announced in *Messina*, the employee status of the teachers in the case at bar does not vitiate their claim of immunity.

Plaintiffs' argument that "Defendant West's order to search plaintiffs in violation of their fourth amendment rights and defendants Brown and Miller's performance of that directive were clearly intentional acts and were not simply negligent" is without force. "[M]alicious intention," not voluntariness, is the operative concept in constitutional tort cases. *See Wood*, 420 U.S. at 322, 95 S.Ct. at 1001. There is no evidence that the defendants acted with the intent to cause any injury to plaintiffs' rights or with reckless disregard of the likelihood of such an injury. (See opinion filed December 28, 1987 at 20).

Upon a careful examination of Virginia law, the Court finds that defendants in this case are entitled to the protection of sover-

---

**10.** In *Banks v. Sellers*, the Virginia Supreme Court reasoned that

When the duties of the division superintendent [who is entitled to immunity] and the high school principal are compared, it is apparent that the principal is, for his school, essentially a counterpart of the superintendent. Although the fundamental authority is diminished and restricted, the function is very similar.

The principal still performs a large number of discretional and managerial functions in the school and, therefore, is entitled to the same immunity.

224 Va. 168, 173, 294 S.E.2d 862, 865 (1982). The same reasoning extends logically from principals to teachers who are, for their classrooms, essentially counterparts of the principal for purposes of maintaining order.

eign immunity from damages liability under Va.Code Ann. section 19.2–59 (1983).

## II

For the reasons stated above, it is hereby ORDERED as follows.

Plaintiffs' motion to reconsider is GRANTED.

Defendants' motion for summary judgment is GRANTED as to liability for compensatory and punitive damages under Va. Code Ann. section 19.2–59 (1983).