Present:  All the Justices

MONICA L. CROMARTIE

OPINION BY
v.  Record No. 180851                       CHIEF JUSTICE DONALD W. LEMONS
                                            JANUARY 16, 2020
BRIAN LEE BILLINGS


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

In this appeal, we consider whether the Circuit Court of the City of Petersburg ("circuit court") erred when it granted Brian Billings' ("Billings") motion to strike the evidence of Monica Cromartie's ("Cromartie") claims against him for an unlawful search based on Code § 19.2-59, for excessive force under 42 U.S.C. § 1983 ("§ 1983"), and for false arrest under § 1983.

## I.  Facts and Proceedings

Cromartie filed a complaint in the circuit court against Billings, a former police officer, alleging two Fourth Amendment violations under § 1983 for excessive force and false arrest, a violation of Code § 19.2-59 for an illegal search, and claims for assault, battery, false imprisonment, and malicious prosecution.  The matter proceeded to a day-long jury trial.

The evidence presented at trial demonstrated that on February 12, 2015, Billings initiated a traffic stop of Cromartie's vehicle for speeding.  Before Billings approached Cromartie's car, she exited her vehicle, yelling to Billings.  Billings directed Cromartie to reenter her vehicle and close the door.  Cromartie followed this instruction.  At the time of this incident, Cromartie was a fifty-four-year-old woman weighing about 100-pounds. She suffered from a condition known as strabismus which causes a misalignment of the eyes, and had also sustained knee injuries, had a plate in her right ankle, was afflicted by hearing issues, and had a rough speaking voice.

According to the summons for speeding written and issued by Billings, Cromartie was four feet, nine inches tall.

After stopping Cromartie, Billings "waited until [his] backup arrived," then approached Cromartie's vehicle. Billings' body camera video showed Cromartie in the driver's seat talking on a cell phone.[1] Billings knocked on Cromartie's window. Cromartie glanced at Billings briefly and said, "What." After a pause, Billings said, "I need you to roll down your window." Cromartie made no movement to indicate that she heard Billings as she talked loudly on the phone. Following another pause, Billings said, "Ma'am," and knocked on her window a second time. Cromartie continued talking on the phone, turned momentarily towards Billings, and said, "Hey officer, leave me alone."

Mere seconds passed before Billings opened the driver's door, grabbed Cromartie by the arm, pulled her from the vehicle, and forced her face-down onto the pavement. During this unexpected physical contact, Cromartie exclaimed, cursed, and appeared to ask Billings to explain the violence. In his deposition testimony, Billings claimed that he removed Cromartie from the vehicle to arrest her for obstruction of justice.[2] In his deposition testimony, Billings admitted that he did not ask her to open the door or exit the vehicle prior to using force. Billings could not recall whether Cromartie made threats or attempted to flee.

---

[1] Through the body camera footage that is part of the record on appeal, we can measure the length of time between when Billings knocked on the window of Cromartie's car and when Billings forced Cromartie face-down onto the pavement. Initially, Billings knocked on the window. After waiting thirteen seconds, Billings said "Ma'am," and then knocked on her window a second time. After this second knock, Billings waited three seconds before opening Cromartie's door, grabbing her left wrist, removing her from the vehicle, and forcing her face-down onto the pavement. The act of removing her from the car and taking her to the pavement took three seconds. In total, nineteen seconds transpired from the time Billings first knocked on Cromartie's window to the moment her face struck the pavement.

[2] Cromartie read Billings' deposition testimony into evidence.

Once Billings forced Cromartie onto the pavement, he placed his weight on Cromartie's back. The impact injured Cromartie's forehead, teeth, lip, right eye, and right knee. Billings secured Cromartie on the ground and, with the help of the backup officer, handcuffed her. The officers then brought Cromartie to her feet against the back of her own vehicle. At that time, the backup officer finally told Cromartie that she was under arrest, but without stating the charge. Thereafter, the officers placed leg shackles on Cromartie and seated her on the curb behind her vehicle. Cromartie remained in the custody of the backup officer while seated on the curb.

With Cromartie secured on the sidewalk behind her vehicle, Billings walked to the driver's side door of Cromartie's vehicle, cursed, opened the door, retrieved Cromartie's purse from the passenger seat, and began searching the purse. In his deposition testimony, Billings admitted that he did not ask Cromartie for "any type of ID" and he did not "ask her for permission to go look for her ID." As he was searching Cromartie's purse, Billings said, "Well, right now she is under arrest for . . . ," and trailed off, not completing his sentence. Billings continued to search the purse, removing lingerie and opening a case containing an e-cigarette vaping device. He asked Cromartie if the e-cigarette had "marijuana residue in it," to which she replied, "It doesn't matter—it's my electronic cigarette." When Cromartie asked why Billings was going through her belongings, Billings responded, "It's because you're under arrest, and I'm looking for some sort of identification for you, ma'am." After an emergency medical technician ("EMT") arrived on scene and asked where Cromartie's identification was, Cromartie replied, "It should be in the cigarette ashtray." The EMT also asked Cromartie for her name and how to spell it, and she promptly provided this information. Prior to the EMT's question, neither Billings nor the backup officer asked Cromartie for her identification.

3

Despite Cromartie stating that her identification was in the car ashtray, Billings nevertheless continued searching her purse. Even after finding Cromartie's social security card in her purse and radioing dispatch for confirmation of her identity, Billings continued to search Cromartie's belongings. He eventually found a small metal container in the purse, which he told another officer "look[ed] like" it contained "marijuana" or "cocaine residue." He then placed her purse in his vehicle and returned to the driver's side of Cromartie's car to search the car once more.

After Cromartie's arrest, Cromartie, Billings, and the backup officer proceeded to the magistrate's office, where Billings obtained arrest warrants for simple possession of marijuana and obstruction of justice. Billings testified under oath to the magistrate that he "opened the car door, instructed her to get out," and had told her to "open the car door or roll down the window." He also stated to the magistrate that Cromartie struggled with him and that he had told Cromartie she was under arrest prior to this struggle. By contrast, Cromartie told the magistrate that Billings did not order her out of the car before he pulled her out of it. The magistrate credited Billings' account of the incident and found probable cause to issue the warrants.

During the subsequent criminal trial, Cromartie moved to suppress all evidence Billings uncovered during the search of her car and purse. The Commonwealth did not oppose the motion. Accordingly, the court dismissed the possession and obstruction of justice charges against Cromartie, thereby ending the criminal proceedings on these charges. Thereafter, Cromartie was found guilty only of speeding.

At the close of Cromartie's case-in-chief in this civil action, the circuit court granted Billings' motion to strike the § 1983 and Code § 19.2-59 claims on the grounds of qualified immunity and sovereign immunity, respectively. The circuit court denied Billings' motions to

4

strike the assault, battery, false imprisonment, and malicious prosecution claims. Billings then presented his own evidence and Cromartie offered no rebuttal evidence. Billings renewed his motion to strike the remaining claims, but the circuit court denied this motion. Cromartie and Billings then tendered and argued their proposed jury instructions to the court. As pertinent to this appeal, the following instructions were given to the jury, incorporating the Circuit Court's rulings on the parties' arguments concerning their proposed instructions:

### Jury Instruction 11

False imprisonment is an intentional restriction of a person's freedom of movement without legal right. A false imprisonment results from the intentional use of force, words, or acts which the person restrained is afraid to ignore or to which she reasonably believes she must submit.

### Jury Instruction 14

A person has the right to use reasonable force to resist an unlawful arrest. The use of that force is not an assault [or] battery. Any force used in resisting a lawful arrest is an assault and battery.

### Jury Instruction 16

A lawful arrest is a restraint of another's movement with the legal right to do so. An arrest by a law enforcement officer for a criminal offense committed in his presence is a lawful arrest. An arrest by a law enforcement officer who had probable cause to believe that the individual he arrested was committing a misdemeanor in his presence is a lawful arrest even if it is later discovered that the officer was mistaken.

### Jury Instruction 21

For purposes of the malicious prosecution claim, malice exists when the controlling motive for instituting criminal proceedings is any reason except a genuine desire to see justice done, to enforce the law, or the punish the guilty. Malice may be inferred from a lack of probable cause.

<u>Jury Instruction 23</u>

You shall find your verdict for Ms. Cromartie and against Officer Billings if Ms. Cromartie has proved by the greater weight of the evidence that:

    (1) Officer Billings instituted the obstruction of justice charge against Ms. Cromartie; and
    (2) that the criminal proceeding ended in a manner not unfavorable to Ms. Cromartie; and
    (3) the criminal proceeding was instituted by Officer Billings without probable cause; and
    (4) Officer Billings acted with malice.

You shall find your verdict for Officer Billings if Ms. Cromartie failed to prove one or more of the elements above.

<u>Jury Instruction 24</u>

Mr. Billings's warrantless arrest of Ms. Cromartie for misdemeanor obstruction of justice was lawful only if Mr. Billings had probable cause, prior to the arrest, to believe that Ms. Cromartie:

    (1) Knowingly attempted to impede a law enforcement officer,
    (2) While the law enforcement officer was lawfully engaged in duties as a law enforcement officer.

Mr. Billings has the burden of proof on these issues.

The jury returned a verdict in favor of Cromartie for the four claims that survived the motion to strike and awarded her $23,499 in damages. The circuit court entered an order styled as "Final Order" in the case on June 15, 2017. Cromartie appealed this "Final Order" to this Court, but by order dated December 1, 2017, this Court found the order appealed from was not a final order. This Court dismissed the appeal without prejudice to the right to refile and denied the subsequent motion to reconsider. Consequently, Cromartie filed two motions in the circuit court which resulted in the circuit court entering a final order on May 11, 2018, denying Cromartie's motion to reconsider and granting summary judgment for the three stricken claims

in Billings' favor. Cromartie appealed the circuit court's decision to grant Billings' motions to strike. Billings did not file a separate appeal under Code § 8.01-670(A)(3) and Rule 5:9, or assignments of cross-error under Rules 5:18(c) and 5:28(e), to challenge the jury's verdicts against him.

We granted an appeal on the following assignments of error:

1. The circuit court erred in granting, at the close of Cromartie's case-in-chief, Billings' motion to strike Cromartie's claim of unlawful search in violation of Code § 19.2-59, and erred in denying Cromartie's motion to reconsider this decision, and erred by consequently entering summary judgment for Billings on this claim based on striking the claims.

2. The circuit court erred in granting, at the close of Cromartie's case-in-chief, Billings' motion to strike Cromartie's 42 U.S.C. § 1983 claim of excessive force in violation of the Fourth Amendment, and erred in denying Cromartie's motion to reconsider this decision, and by consequently entering summary judgment for Billings on this claim based on striking the claims.

3. The circuit court erred in granting, at the close of Cromartie's case-in-chief, Billings' motion to strike Cromartie's 42 U.S.C. § 1983 claim of false arrest in violation of the Fourth Amendment for the obstruction of justice charge, and erred in denying Cromartie's motion to reconsider this decision, and by consequently entering summary judgment for Billings on this claim based on striking the claims.

## II. Analysis

### A. Standard of Review

This appeal arises from the circuit court's decision to grant Billings' motion to strike three of Cromartie's claims after finding that the officer was entitled to sovereign immunity on the Code § 19.2-59 unlawful search claim and qualified immunity on the § 1983 excessive force and § 1983 false arrest claims. When this Court reviews a circuit court's decision to strike a plaintiff's evidence, it accepts as true all evidence favorable to the plaintiff and all reasonable

7

inferences that may be drawn therefrom. *Fox Rest Assocs., L.P. v. Little,* 282 Va. 277, 283-84 (2011). Determining whether an officer is entitled to immunity is a question of law this Court reviews de novo. *City of Chesapeake v. Cunningham,* 268 Va. 624, 633 (2004).

## B. Sovereign Immunity

Cromartie challenges the circuit court's decision to grant Billings' motion to strike her Code § 19.2-59 claim for unlawful search against Billings based on sovereign immunity. Code § 19.2-59 prohibits warrantless searches of any place, thing, or person and provides that any officer performing such a search shall be "liable to any person aggrieved thereby in both compensatory and punitive damages." The statute creates a cause of action against law enforcement officers and other government agents. *Buonocore v. Chesapeake & Potomac Tel. Co.,* 254 Va. 469, 473 (1997).

"Sovereign immunity . . . applies to actions brought under section 19.2-59," as the federal district court has held. *Burnham v. West,* 681 F. Supp. 1169, 1172 (E.D. Va. 1988). Despite the statute's similarity to 42 U.S.C. § 1983, *see id.* at 1172 n.7, the immunity defense that applies to Code § 19.2-59 is sovereign immunity, not qualified immunity. *Amato v. City of Richmond,* 875 F. Supp. 1124, 1143 (E.D. Va. 1994). Code § 19.2-59 concerns a "common law tort that has achieved constitutional dimensions, and the statute specifies the familiar tort law remedy of damages." *Burnham,* 681 F. Supp. at 1172. Sovereign immunity, "which is primarily applied to bar damages liability in tort suits," applies to Code § 19.2-59 actions. *Id.* Code § 19.2-59 "has been consistently held to provide only the same protection as that afforded by the Fourth Amendment." *Id.* at 1173; *see Buonocore,* 254 Va. at 473. Accordingly, because Code § 19.2-59 is analyzed under the Fourth Amendment, "only the constitutional standard of conduct,

therefore, should apply for purposes of determining sovereign immunity in actions brought under section 19.2-59." *Burnham,* 681 F. Supp. at 1173.

Virginia's sovereign immunity doctrine protects officers only for simple negligence. *Id.* at 1173. Sovereign immunity does not protect one who "acts wantonly, or in a culpable or grossly negligent manner." *James v. Jane,* 221 Va. 43, 53 (1980). Gross negligence is the absence of slight diligence or the want of even scant care. *Colby v. Boyden,* 241 Va. 125, 133 (1991). "Willful and wanton negligence is action undertaken in conscious disregard of another's rights, or with reckless indifference to consequences with the defendant aware, from his knowledge of existing circumstances and conditions, that his conduct probably would cause injury to another." *Green v. Ingram,* 269 Va. 281, 292 (2005) (quoting *Woods v. Mendez,* 265 Va. 68, 76-77 (2003)).

This Court has developed a test to determine entitlement to sovereign immunity for acts of simple negligence. *Messina v. Burden,* 228 Va. 301, 313 (1984) (citing *James,* 221 Va. at 53). Among the factors to be considered are the following: "The nature of the function performed by the employee; the extent of the [government's] interest and involvement in the function; the degree of control and direction exercised by the [government] over the employee; and whether the act complained of involved the use of judgment and discretion." *Id.* In this case, Billings satisfies these requirements because the City of Petersburg employed him as a law enforcement officer, a government function; law enforcement requires the exercise of significant judgment and discretion; the City exercised administrative control over the police department and Billings as an employee; and the City has a clear interest in the work Billings performed. If Billings' actions had constituted simple negligence, then those actions would have been entitled to sovereign immunity.

Billings is not protected by sovereign immunity, however, because his actions exceeded simple negligence. First, because "settled, indisputable law" forbade Billings' actions, he is not protected by the scope of sovereign immunity. *Burnham*, 681 F. Supp. at 1173. Second, the search constituted wanton and willful misconduct taken in disregard of another's rights. *Green*, 269 Va. at 292.

The Supreme Court of the United States has held that an officer may not conduct a "vehicle search incident to a recent occupant's arrest after the arrestee has been secured and cannot access the interior of the vehicle." *Arizona v. Gant,* 556 U.S. 332, 335 (2009). In the same case, the Court also concluded that "circumstances unique to the automobile context justify a search incident to arrest when it is reasonable to believe that evidence of the offense of arrest might be found in the vehicle." *Id.* In *Gant,* the officers arrested Gant for driving on a suspended license. After Gant was handcuffed and locked in a patrol car, officers searched his car and discovered cocaine in a jacket pocket. *Id.* at 335. The Supreme Court held that police may search the passenger compartment of a vehicle incident to a recent occupant's arrest only when "the arrestee is unsecured and within reaching distance of the passenger compartment at the time of the search." *Id.* at 343. Because Gant was handcuffed and locked in a patrol car, the Court held that the search was unreasonable. *Id.* at 344. The Supreme Court additionally held that the search could not be justified by the likelihood of discovering offense-related evidence because the officers arrested Gant for driving with a suspended license, "an offense for which police could not expect to find evidence in the passenger compartment of Gant's car." *Id.* at 344; *see also Riley v. California*, 573 U.S. 373, 385 (2014) (search permitted when it is "reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle"); *United States v. Norman*, 935 F.3d 232, 236 (4th Cir. 2019) (same).

10

The evidence in this case established that while Cromartie was seated behind her vehicle, secured with handcuffs and leg shackles, and in the physical custody of the backup officer, Billings entered Cromartie's car, retrieved her purse from it, and proceeded to search the purse. Neither her vehicle nor her purse could have contained evidence of speeding. *See Gant,* 556 U.S. at 335, 344; *see also Rodriguez v. United States*, 575 U.S. ___, 135 S.Ct. 1609, 1621 (2015) (warrantless search incident to arrest of the vehicle permissible "if it is reasonable to believe evidence relevant to the crime of arrest might be found there"). Additionally, neither her vehicle nor her purse could have contained evidence related to obstruction of justice, the offense for which Billings obtained an arrest warrant from a magistrate after the encounter. *Gant* is the requisite "settled, indisputable law" that forbade Billings' search. *Burnham,* 681 F. Supp. at 1173.

The Fourth Amendment protects against unreasonable searches without a warrant and without probable cause. Physically intruding upon or occupying the space of a vehicle for purposes of gathering information is a search. *See United States v. Jones,* 565 U.S. 400, 404-05 (2012). In this case, Billings entered Cromartie's car multiple times to collect information. Each of these instances constituted a search under *Jones.* During the criminal case against Cromartie, the Commonwealth declined to defend Billings' search, implicitly conceding that the searches were illegal.

Because Billings' search was performed contrary to well-established law and violated Cromartie's Fourth Amendment rights, it exceeded simple negligence. Therefore, sovereign immunity does not protect Billings. The circuit court erred by granting the motion to strike based on sovereign immunity for the Code § 19.2-59 claim for unlawful search.

11

## C. Qualified Immunity

"[G]overnment officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1988). Applying qualified immunity on a motion to strike involves a two-part analysis: first, whether the evidence, "[t]aken in the light most favorable to the party asserting the injury . . . shows the officer's conduct violated a constitutional right," *Saucier v. Katz,* 533 U.S. 194, 201 (2001); and, second, whether the right at issue, when the evidence is viewed in the light most favorable to the plaintiff, was "'clearly established'" at the time of the violation. *Tolan v. Cotton,* 572 U.S. 650, 655-56 (2014) (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)).

### i. 42 U.S.C. § 1983 False Arrest

Cromartie challenges the circuit court's decision to grant Billings' motion to strike her § 1983 claim of false arrest in violation of the Fourth Amendment for the obstruction of justice charge based on qualified immunity. The Fourth Amendment prohibits police officers from arresting a person without a warrant unless "there is probable cause to believe that a criminal offense has been or is being committed." *United States v. Johnson,* 599 F.3d 339, 346 (4th Cir. 2010). Probable cause is an objective test, requiring that "at the time the arrest occurs, the facts and circumstances within the officer's knowledge would warrant the belief of a prudent person that the arrestee had committed or was committing an offense." *Id.* The "fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or [] in 'objective good faith.'" *Messerschmidt v. Millender,* 565 U.S. 535, 546 (2012) (quoting *United States v. Leon,* 468 U.S. 897, 922-23 (1984)). Nevertheless, when

"it is obvious that no reasonably competent officer would have concluded that a warrant should issue," the "'shield of immunity' otherwise conferred by the warrant will be lost." *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341 (1986)).

Review of a § 1983 false arrest claim defers to the state's interpretation of its own criminal statute for which the person was arrested. *Wilson v. Kittoe,* 337 F.3d 392, 399 (4th Cir. 2003). Billings arrested Cromartie for a violation of Code § 18.2-460(a) (misdemeanor obstruction of justice). Code § 18.2-460(a) prohibits knowingly obstructing, without just cause, a law enforcement officer in the performance of the officer's duties. Virginia recognizes a "broad distinction between avoidance [of a lawful arrest] and resistance or obstruction." *Jones v. Commonwealth,* 141 Va. 471, 478 (1925); *see also Wilson,* 337 F.3d at 400. Merely making the "officer's task more difficult" but not "imped[ing] or prevent[ing] the officer from performing that task" is not obstruction. *Ruckman v. Commonwealth,* 28 Va. App. 428, 429 (1998). Obstruction "ordinarily implies opposition or resistance by direct action." *Brown v. City of Danville,* 44 Va. App. 586, 597 (2004); *Ruckman,* 28 Va. App. at 429 (citing *Jones,* 141 Va. at 478). "The act done must be with an intention on the part of the perpetrator to obstruct the officer himself, not merely to oppose or impede the process." *Jones,* 141 Va. at 479.

The facts in this case demonstrate that no reasonable officer could have concluded that Cromartie's behavior constituted obstruction of justice. Cromartie was pulled from her vehicle and forced onto the pavement mere seconds after failing to respond to Billings' instruction to roll down her window. Cromartie did not threaten Billings, she did not act with an intention to obstruct Billings, and she did not employ direct action to resist arrest. Cromartie's brief delay in responding to Billings' instruction did not constitute obstruction of justice. Furthermore, while Billings obtained an arrest warrant for obstruction of justice, it was based on a misleading

13

account of the events leading to Cromartie's arrest. On this record, therefore, Billings' actions are not entitled to qualified immunity. Accordingly, the circuit court erred by striking the § 1983 claim for false arrest based upon qualified immunity.

## ii. 42 U.S.C. § 1983 Excessive Force

Cromartie challenges the circuit court's granting of Billings' motion to strike her § 1983 claim for excessive force in violation of the Fourth Amendment. The Fourth Amendment is the "source of constitutional protection against th[e] sort of physically intrusive government conduct" alleged in excessive force claims. *Graham v. Connor,* 490 U.S. 386, 395 (1989). Determining whether the force was reasonable requires "balancing . . . the 'nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake" in light of the facts of each case. *Id.* at 396 (quoting *Terry v. Ohio,* 392 U.S. 1, 9 (1968)). The reasonableness of the force is evaluated from the objective perspective of a reasonable police officer on the scene, allowing for officers to make "split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary." *Id.* at 396-97. In addressing the reasonableness of an officer's actions, we must consider the facts at the moment that the challenged force was employed. *See Henry v. Purnell,* 652 F.3d 524, 531 (4th Cir. 2011).

The Supreme Court of the United States established a test in *Graham* to determine whether the force used by a police officer violated a person's constitutional rights. In that case, Graham, a diabetic, asked a friend to drive him to a convenience store to purchase orange juice to counteract the onset of an insulin reaction. *Id.* at 388. When Graham entered the convenience store and observed the number of people ahead of him in line, he hurried out and asked the friend to drive him elsewhere. *Id*. at 388-89. The police officer became suspicious after Graham's

14

hasty entrance and exit, so he followed the car and made an investigative stop, ordering Graham and his friend to wait while he found out what happened in the store. *Id.* at 389. Back-up officers arrived on the scene, handcuffed Graham, and ignored or rebuffed attempts to explain and treat Graham's diabetic insulin reaction. *Id.* The police did not allow Graham to drink a glass of orange juice brought to the scene by a second friend. *Id.* During the encounter with police, Graham sustained a broken foot, cuts on his wrists, a bruised forehead, and an injured shoulder. *Id.* at 390. The Supreme Court held that the proper application of an excessive force test under the Fourth Amendment "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

To determine whether Billings' use of force violated Cromartie's Fourth Amendment rights, we apply the three factors articulated in *Graham*. Application of the *Graham* factors to this case demonstrates that Billings' use of force was not objectively reasonable and therefore he is not entitled to qualified immunity. First, Cromartie's infraction was minor: speeding. When the offense is a "minor one . . . the first *Graham* factor weighed in plaintiff's favor." *Jones,* 325 F.3d at 528 (quoting in part from *Rowland v. Perry,* 41 F.3d 167, 174 (4th Cir. 1994) (internal quotation marks omitted)). Speeding, the offense for which Billings stopped Cromartie, is not a criminal offense. Speeding is a traffic infraction under Code § 46.2-874. Obstruction of justice, the offense for which Billings unjustifiably obtained an arrest warrant, is a misdemeanor under Code § 18.3-460. The first *Graham* factor, therefore, strongly favors Cromartie.

Second, Cromartie posed no immediate threat to the safety of the officer or others. Cromartie's window was rolled up, she was seated inside the vehicle, and she was on the

15

telephone. Her car engine was off, and she made no threatening actions or statements. Cromartie had no actual, physical contact with Billings before he used force to remove her from her vehicle. Furthermore, Cromartie was a 100-pound woman with several health issues, Billings "did not have any reason to believe" that she was armed, and she made no other movements to indicate that she was a danger to Billings. *See Smith v. Ray,* 781 F.3d 95, 102 (4th Cir. 2015); *see also Rowland,* 41 F.3d at 174. Billings was a large man with a second officer on the scene. *See Smith,* 781 F.3d at 102; *see also Rowland,* 41 F.3d at 174. Accordingly, the second *Graham* factor also strongly favors Cromartie.

Third, Cromartie did not attempt to flee or resist arrest. Billings initiated the force against Cromartie when she was not looking at him. The video of the encounter does not show a physical struggle from Cromartie. Rather, the video shows an uninterrupted motion in which Billings pulled Cromartie from the vehicle and forced her onto the pavement three seconds later. A reasonable officer could not believe that the "initial act of pulling [one's] arm away" when an officer grabs her "without warning or explanation" justifies the officer's decision to throw the person to the pavement. *Smith,* 781 F.3d at 103. Billings pulled Cromartie from the vehicle after two separate knocks on the window, within mere seconds of making contact with Cromartie, and without having given any order to Cromartie to exit the vehicle. Billings grabbed Cromartie without warning or explanation. Cromartie's reaction was instinctive, resulting from the abrupt physical contact by Billings. This reaction was not resistance. *Id.* Thereafter, Cromartie complied with the officers when Billings requested her other arm to put it in handcuffs. Taking this evidence in the light most favorable to Cromartie, the third *Graham* factor also strongly favors Cromartie.

16

Application of the *Graham* factors to this case demonstrates that Billings' use of force was objectively unreasonable under the Fourth Amendment. This excessive force violated Cromartie's Fourth Amendment constitutional right against physically intrusive government conduct.

In determining whether the right at issue was clearly established at the time of the violation, "'the salient question . . . is whether the state of the law' at the time of the incident provided 'fair warning' to the defendants 'that their alleged [conduct] was unconstitutional.'" *Tolan,* 572 U.S. at 656 (quoting *Hope,* 536 U.S. at 741). *Graham,* and its progeny, *Smith* and *Rowland,* established such fair warning to Billings.

Following *Graham,* the Fourth Circuit applied the *Graham* factors in both *Rowland* and *Smith. Rowland* involved a misdemeanor larceny. 41 F.3d at 174. In that case, a police officer witnessed a woman drop a five-dollar bill in a bus station and saw Rowland pick it up without returning it. *Id.* at 171. The officer approached Rowland and told him to return the money to the woman who dropped it. *See id.* Rowland attempted to do so, but the woman stated that it was not hers. *See id.* Rowland then left the bus station. *See id.* While Rowland stood at the street corner, the officer approached, and "without any provocation, [] grabbed his collar and jerked him around, yelling harshly as he did so." *See id.* at 172. Frightened by the sudden force, Rowland instinctively tried to escape the officer's grasp. *See id.* The officer responded by punching Rowland and throwing him down, "throwing his weight against Rowland's right leg and wrenching the knee until it cracked," tearing Rowland's anterior cruciate ligament. *Id.* Holding the three *Graham* factors disfavored the officer, the court in *Rowland* concluded that the officer was not entitled to qualified immunity.

*Smith* involved contributing to the delinquency of a minor, a "nonviolent misdemeanor offense . . . not of the type that would give an officer any reason to believe that Smith was a potentially dangerous individual." *Smith,* 781 F.3d at 102. The plaintiff in *Smith* was likewise a small woman faced with two on-scene officers. *Id.* at 93, 102. One of the officers, Ray, was the defendant. In *Smith,* the suspect used clearly offensive language after the sudden initiation of force. *Id.* at 98. Smith was compliant with the officers until Ray suddenly grabbed her arm. Then, she instinctively pulled her arm away from the officer, which the Fourth Circuit determined was a reaction to the officer's sudden use of force. *Id.* at 98, 102-03. Smith asked why Ray was suddenly grabbing her and then was forced to the floor. In light of *Rowland,* the court in *Smith* concluded that no reasonable officer could have believed that "rather than answer . . . why Ray was suddenly grabbing her, Ray was justified in throwing her to the ground, slamming his knee into her back, and wrenching her arm behind her." *Id.* at 103. The court in *Smith* held that the officer was not entitled to qualified immunity.

These cases are sufficiently similar to Cromartie's to constitute clearly established law. *Smith* and *Rowland* provided fair warning to Billings that the amount of force he used against Cromartie under the circumstances was unreasonable. In *Smith,* there were arguments that *Rowland* was not sufficiently similar to the facts in *Smith* to constitute clearly established law. The court in *Smith* concluded:

> [O]ur determination that the officer was not entitled to qualified immunity in *Rowland* was not based on any case that was factually on all fours. Rather, it was based on the simple fact that the officer took a situation where there obviously was no need for the use of any significant force and yet took an unreasonably aggressive tack that quickly escalated it to a violent exchange when the suspect instinctively tried to defend himself.

18

Like the officer in *Smith*, in this case Billings faced a situation where there was obviously no need for the use of any force—writing a traffic citation to Cromartie for speeding and her minor delay in responding to his request to open her window—and took an unreasonably aggressive action of forcing her face-down onto the pavement, escalating this incident to a violent exchange where she suffered numerous injuries. Because the factors so strongly favor Cromartie and because the force was excessive under the circumstances, a police officer could not have believed the use of force was objectively reasonable. The holdings in *Graham, Smith,* and *Rowland* demonstrate that the circuit court erred in granting Billings qualified immunity on the excessive force claim. Because Billings' use of force was unreasonable under the circumstances and because it fails both prongs of the qualified immunity analysis at the motion to strike stage, the circuit court erred by granting the motion to strike on the § 1983 excessive force claim.

## D. The Law of the Case

As discussed above, the circuit court erred by granting Billings' motion to strike the Code § 19.2-59 unlawful search claim, the § 1983 false arrest claim, and the § 1983 excessive force claim based on sovereign immunity and qualified immunity. As a result, we now turn to whether any outstanding liability questions remain for these three claims.

An instruction given without objection will not be disturbed on appeal, Rule 5:25, and becomes the law of the case, governing all subsequent proceedings. "Under the law of the case doctrine, a legal decision made at one stage of the litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time." *Kondaurov v. Kerdasha,* 271 Va. 646, 658 (2006) (internal quotation marks omitted).

19

The jury found in favor of Cromartie for assault, battery, false imprisonment, and malicious prosecution. Billings did not appeal these verdicts. Consequently, the legal decisions made by the jury became the law of the case and govern all subsequent proceedings, including this appeal and any matters on remand. By finding in favor of Cromartie for her claims of malicious prosecution and false imprisonment, the jury necessarily found that Billings did not have probable cause to arrest Cromartie for obstruction of justice and that he arrested her without justification.

First, the malicious prosecution claim survived the motion to strike and the jury found in favor of Cromartie. Jury Instructions 21, 23, and 24 pertained to Cromartie's malicious prosecution claim and established the law of such a claim. The jury found that Billings did not have probable cause to arrest Cromartie for obstruction of justice. To find for Cromartie on this question, Jury Instruction 23 required a finding that Billings instituted the criminal proceeding "without probable cause." Furthermore, Jury Instruction 16 informed the jury that a lawful arrest is "a restraint of another's movement with the legal right to do so." Billings did not challenge the malicious prosecution verdict. Consequently, the law of the case established that the arrest was unlawful because it was conducted without probable cause.

Second, the jury found in favor of Cromartie on her false imprisonment claim. As stated in Jury Instruction 11, "[f]alse imprisonment is an intentional restriction of a person's freedom of movement without legal right." When the jury found for Cromartie on her false imprisonment claim, it necessarily found that her freedom was restricted without legal right. Billings did not appeal the false imprisonment verdict, so the legal decision of the jury became the law of the case. Therefore, Billings did not have a legal right to imprison Cromartie and falsely arrested her. Accordingly, under the law of the case, no lawful arrest occurred because Billings

20

performed the arrest without probable cause and restricted Cromartie's freedom without legal right.

### i. Code § 19.2-59 Unlawful Search

Code § 19.2-59 provides a cause of action against law enforcement officers for warrantless searches. "Warrantless searches, of course, are per se unreasonable, subject to a few well-defined exceptions." *Abell v. Commonwealth,* 221 Va. 607, 612 (1930); *see also Katz v. United States.,* 389 U.S. 347, 357 (1967). One such exception is the search incident to a lawful arrest. *See Morris v. Commonwealth,* 208 Va. 331, 334 (1967) ("[W]here incident to a valid arrest," officers may lawfully search and seize personal effects without a search warrant) (citing *United States v. Jeffers,* 342 U.S. 48, 51 (1951)). Although a warrantless search may be performed incident to a lawful arrest, the law of this case determined that no such lawful arrest occurred. Billings did not have probable cause to search Cromartie's purse and the search was not performed incident to a lawful arrest. Because the search was not lawful, no liability question remains regarding it and sovereign immunity does not insulate Billings from liability. Accordingly, we will remand this claim to the circuit court for consideration of damages only.

### ii. § 1983 False Arrest

Because Billings lacked probable cause to arrest Cromartie and because the arrest was performed without legal right as established by the law of the case, there are no outstanding liability issues pertaining to the § 1983 false arrest claim. We will remand this claim to the circuit court for a determination of damages only.

### iii. § 1983 Excessive Force

*Graham* presupposes a prior lawful arrest. As indicated above, Billings' arrest of Cromartie was unlawful and Billings falsely imprisoned Cromartie. Jury Instruction 14 stated

21

that a person has a right to use reasonable force to resist an unlawful arrest.[3]  Any force exercised by Billings was per se excessive as he did not have the legal right to use force against Cromartie to effectuate an illegal arrest.  Consequently, no outstanding liability questions exist for the excessive force claim because Billings used force to effectuate an unlawful arrest.  We will remand this claim to the circuit court for a determination of damages only.

### III.  Conclusion

When a case is reversed and remanded, and no liability questions remain, the circuit court must conduct "a new trial limited to the issue of damages."  *Bradner v. Mitchell,* 234 Va. 483, 491 (1987); *Rawle v. McIlhenny,* 163 Va. 735, 748 (1934); *see also Nolte v. MT Technology Enterprises, LLC.,* 284 Va. 80, 98 (2012), *Nolte v. MT Technology Enterprises, LLC.,* Record No. 140979, 2015 WL 10945196, at *2 (May 8, 2015) (unpublished).  For the reasons stated, we will reverse the circuit court's decision to grant the motion to strike the § 19.2-59 unlawful search claim, the § 1983 false arrest claim, and the § 1983 excessive force claim.  We will remand the case for proceedings consistent with this opinion.  More particularly, we will remand the case for an assessment of such damages as Cromartie is entitled on the Code § 19.2-59 unlawful search, § 1983 false arrest, and § 1983 excessive force claims.  Finally, while we will remand only for an assessment of damages, we note that evidence ordinarily presented for liability purposes may also be relevant to the question of compensatory and punitive damages, an award of costs, interest, attorneys' fees, and such other damages as Cromartie sought in her complaint.

*Reversed and remanded.*

---

[3] Under common law, a citizen generally is permitted to use reasonable force to resist an illegal arrest. *See Commonwealth v. Hill,* 264 Va. 541, 546 (2002); *Banner v. Commonwealth,* 204 Va. 640, 646–47 (1963).

22