COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Frank and Humphreys
Argued by teleconference


TRACY LINN HURLEY
                                        OPINION BY
v.    Record No. 2159-00-1      JUDGE ROBERT J. HUMPHREYS
                                         JULY 3, 2001
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                  Joseph A. Leafe, Judge

        John D. Hooker, Jr. (Hooker & Migliozzi,
        P.C., on brief), for appellant.

        Susan M. Harris, Assistant Attorney General
        (Mark L. Earley, Attorney General, on brief),
        for appellee.


     Tracy Linn Hurley appeals her conviction, after a bench

trial, of conspiracy to distribute marijuana.  Hurley contends the

trial court erred in denying her motion to suppress the evidence

against her, which she alleged was seized in violation of her

Fourth Amendment rights.

                    I.  Background

     On January 11, 2000, Officers Maurice S. Joseph and Steven D.

Stevens were conducting routine parcel interdiction at Federal

Express in Norfolk, Virginia.  The officers stood at the conveyor

belts with Federal Express employees observing the packages as

they were placed on the conveyor belt from the freight cans in

which they arrived at the station.  The officers watched for

packages that met certain criteria. Specifically, the officers were looking for packages coming from certain drug source cities, packages of an unusual size and weight, or packages with unusual wrapping and/or address labeling. Officer Joseph, who was a trained member of the Norfolk Vice and Narcotics Division since at least 1993, eventually pulled approximately ten to twenty suspicious packages from the conveyor belt and placed them on the floor near the belt. One of the packages that the officers regarded as suspicious was a "real large" box, with an "unusual weight," sent by priority overnight delivery from Hong Kong International Tailors, Albuquerque, New Mexico to W.R. Barker, Hong Kong International Tailors at 410 Briar Hill Road, Suite 105, Norfolk, Virginia. The mailing label on the box was handwritten.

Within minutes of placing the box on the floor with the others, officers brought a drug detection dog past the boxes and the dog alerted on the box addressed to Barker. Officer Joseph "took the box and signed for it from Federal Express." Stevens obtained a search warrant for the box and the officers "brought the box with [them] here to the court where [they] executed the search warrant." Inside the box, they found "aluminum foil around big bundles that were Saran Wrapped." Officer Joseph "cut into the bundles with [his] knife," and observed "masking agents that looked like detergent or some type of bleach detergent and . . . dryer sheets [, as well as] multiple wraps

-

of Saran Wrap."  A field test revealed that the substance inside the bundles was marijuana.

The officers resealed the box and assembled a team to facilitate a controlled delivery of the package.  When the team arrived at Hong Kong Tailors, they found that it was closed. Steven Charles Thomas, an employee with the radio station located next to the tailor shop, signed for the box.  Shortly thereafter, Officer Joseph identified himself to Thomas, read him his rights, and explained the situation to him.  Thomas left a message on the Hong Kong Tailors' answering machine and told them the package was at the radio station and that they could pick it up at any time.  The officers then took the box for the evening and secured it in their "evidence room."

Early the next day, the radio station manager called the police team to let them know that "somebody was going to come and get the box."  The team assembled again and delivered the box to the radio station.  They observed as Hurley, an employee with the tailor shop, entered the radio station.  After a brief conversation, Thomas carried the heavy box to the tailor shop for Hurley.  Hurley then opened the trunk of her car, went into the tailor shop, picked up the box and put it into her trunk.

At that point, Hurley was arrested and advised of her Miranda rights.  Hurley consented to have her car, house and business searched.  Hurley later informed police that she had contacted "Anthony," a former employee with the shop, whom she

-

knew the box to belong to.  Anthony told her not to open the box but to deliver it to a shopping center parking lot, put the box next to an older model red Firebird, and leave.  Anthony told her he would pay her $100 for doing so.  Hurley admitted to police that she thought the package contained "pot."  Hurley was charged with possession with intent to distribute more than five pounds of marijuana, and conspiracy to distribute more than five pounds of marijuana.

At the beginning of trial, Hurley moved to suppress the evidence against her, contending that the officers improperly seized the box in violation of her Fourth Amendment rights.  The Commonwealth contended that Hurley lacked standing to assert such a claim, and, in the alternative, that the officers acted properly.  After taking evidence on the issue, the trial court held that Hurley had standing to assert a privacy interest in the box.  However, the trial court denied the motion to suppress, finding that "there [was] no problem with lifting the box off and setting it on the floor to be examined by the drug dog."

At the close of the Commonwealth's evidence, Hurley moved to strike, contending that the chain of evidence was tainted and that the evidence was insufficient to support the charges.  The trial court overruled the motions but ultimately dismissed the charge of possession with intent to distribute, finding the evidence insufficient on that charge.

-

## II.  Analysis

> We consider the evidence and all reasonable inferences fairly deducible therefrom in the light most favorable to the Commonwealth, the prevailing party at trial.  We apply the same standard when, as here, we review the trial court's denial of the defendant's motion to suppress the evidence.  However, determinations of reasonable suspicion in the context of a Fourth Amendment challenge involve questions of both law and fact and consequently are to be reviewed de novo on appeal.  In performing such a review we give deference to the factual determinations established in the record and independently determine whether under the established law those facts satisfy the constitutional standard.

Bass v. Commonwealth, 259 Va. 470, 475, 525 S.E.2d 921, 924 (2000) (citations omitted).

Hurley correctly asserts that "[t]he Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  United States v. Place, 462 U.S. 696, 700-01 (1983).[1]  "Sealed packages are, [thus], entitled to Fourth Amendment protection against warrantless searches and seizures, just as

---

[1] The issue of whether Hurley possessed the requisite standing to assert a Fourth Amendment claim with respect to the box is not before us.  See United States v. Givens, 733 F.2d 339, 341 (4th Cir. 1984) ("It is firmly established that Fourth Amendment rights are personal and may not be vicariously asserted, and that the exclusionary rule's benefits run only to those whose Fourth Amendment rights have been violated.  To claim the protection of the Fourth Amendment, a defendant must have 'a legitimate expectation of privacy in the invaded place.'").

-

any other private area." United States v. Givens, 733 F.2d 339,

341 (4th Cir. 1984).

The United States Supreme Court has opined that

> [a]lthough in the context of personal
> property, and particularly containers [or
> sealed packages], the Fourth Amendment
> challenge is typically to the subsequent
> search of the container rather than to its
> initial seizure by the authorities, our
> cases reveal some general principles
> regarding seizures.  In the ordinary case,
> the Court has viewed a seizure of personal
> property as per se unreasonable within the
> meaning of the Fourth Amendment unless it is
> accomplished pursuant to a judicial warrant
> issued upon probable cause and particularly
> describing the items to be seized.  Where
> law enforcement authorities have probable
> cause to believe that a container holds
> contraband or evidence of a crime, but have
> not secured a warrant, the Court has
> interpreted the Amendment to permit seizure
> of the property, pending issuance of a
> warrant to examine its contents, if the
> exigencies of the circumstances demand it or
> some other recognized exception to the
> warrant requirement is present.

Place, 462 U.S. at 700-01.  "A 'seizure' of property occurs when

there is some meaningful interference with an individual's

possessory interests in that property." United States v.

Jacobsen, 466 U.S. 109, 113 (1984).

When the wrapped parcel involved in this case was delivered

to Federal Express, its contents were unquestionably subject to

protection by the Fourth Amendment.  However, a party has no

reasonable expectation of privacy in the size, weight or other

exterior characteristics of a package or parcel placed into the

-

stream of commerce.  See United States v. Van Leeuwen, 397 U.S. 249, 251 (1970) (citing Ex Parte Jackson, 96 U.S. 727, 733 (1878)).  Furthermore, the United States Supreme Court has held that "[s]ome brief detentions of personal effects may be so minimally intrusive of Fourth Amendment interests that strong countervailing governmental interests will justify a seizure based only on specific articulable facts that the property contains contraband or evidence of a crime."  Place, 462 U.S. at 706.

Here, the officers confined their investigation of the package to what was, in effect, an on-the-spot inquiry and a relatively immediate exposure to a trained narcotics detection dog.  Given the observation by trained narcotics officers of several suspicious characteristics, such as the place of origin of the package, the size and weight of the package, the method of mailing, as well as the handwritten label addressed to and from a business, we find that the officers had a reasonable, articulable suspicion to briefly seize the item for purposes of further investigation, in order to confirm or dispel their suspicions.

As the United States Supreme Court stated in Van Leeuwen,

> [t]he "protective search for weapons" of a
> suspect which the Court approved in Terry v.
> Ohio, 392 U.S. 1, 20-27 [(1968),] even when
> probable cause for an arrest did not exist,
> went further than we need to go here.  The
> only thing done here on the basis of
> suspicion was detention of the [package].

-

> There was at that point no possible invasion of the right "to be secure" in the "persons, houses, papers, and effects" protected by the Fourth Amendment against "unreasonable searches and seizures" . . . for [the] investigation was certainly not excessive; and at the end of that time probable cause existed for believing that the [package] was part of an illicit project."

397 U.S. at 252.

Accordingly, based upon the totality of the circumstances and balanced against the de minimus nature of the detention, we find that the trial court correctly denied Hurley's motion to suppress the results of the search of the box.  Therefore, we affirm the judgment of the trial court.

Affirmed.

-