PUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judge Chaney and Senior Judge Humphreys
Argued at Richmond, Virginia


JOSHUA HIGHLANDER

                                              OPINION BY
v.      Record No. 2110-23-2         JUDGE ROBERT J. HUMPHREYS
                                              APRIL 8, 2025
VIRGINIA DEPARTMENT OF
  WILDLIFE RESOURCES, ET AL.


FROM THE CIRCUIT COURT OF HENRICO COUNTY
L. A. Harris, Jr., Judge

Joseph Gay (Robert Frommer; Joshua Windham; Institute for Justice,
on briefs), for appellant.

Michael Dingman, Assistant Solicitor General (Jason S. Miyares,
Attorney General; Steven G. Popps, Deputy Attorney General;
R. Cooper Vaughan, Assistant Attorney General; Thomas J. Sanford,
Assistant Attorney General, on brief), for appellees.

Amicus Curiae: National Federation of Independent Business
Small Business Legal Center, Inc. (John S. Moran; Patrick A.
Wallace; McGuireWoods LLP, on brief), for appellant.


After three Department of Wildlife Resources conservation police officers entered Joshua

Highlander's property, seized a camera, and searched it without a warrant, Highlander sought

declaratory and injunctive relief against the Department and the officers in their individual and

official capacities (collectively, the Department) under Article I, § 10 of the Constitution of

Virginia and Code § 19.2-60, and damages under Code § 19.2-59. The Department filed a plea

in bar of sovereign immunity. The Department also demurred, arguing that neither Article I,

§ 10 nor Code § 19.2-60 provides a private right of action and that the warrantless searches and

seizure complied with Virginia law. The circuit court sustained both the demurrer and plea in

bar and dismissed all of Highlander's claims. Upon review, we vacate the circuit court's judgment in part, affirm in part, and reverse and remand for further proceedings in part.

BACKGROUND[1]

Highlander owns a 30-acre residential property in Providence Forge, where he lives with his wife, six-year-old son, and five-year-old daughter. The property includes wooded areas and trails, which Highlander and his family use. One hundred "no trespassing" signs are posted at regular intervals (approximately every 20 feet) on the trees along the property line.

Highlander hunts deer and turkey on his property. About 150 yards behind his house, he maintains a "food plot," which contains crops planted to feed and attract deer. The food plot is separated from Highlander's backyard by a wooded area and is not visible from the back of his house. A path runs from the backyard through the woods to the food plot. Until the events of this case, Highlander kept a motion-activated camera mounted in the center of the food plot "to monitor the land and wildlife." The camera was manufactured by a company called Tactacam and included a monthly subscription plan through which the camera's photos were wirelessly uploaded and stored online. The camera also had a storage card on which thousands of photos were saved.

Highlander's father manages two private farms, one in Charles City County, and one in New Kent County, and maintains food plots on those properties as well. On March 22 and 23, 2023, Highlander's father and brother mowed all three food plots and broadcast millet seed across the food plots to replenish them for the warm season.

---

[1] This appeal arises from a decision sustaining a demurrer and granting a plea in bar for which no evidence was submitted. When reviewing a demurrer, "we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018); *see also Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (same standard applies to plea in bar when no evidence is taken). "Our recitation of the facts, of course, restates only factual allegations that, even if plausibly pleaded, are as yet wholly untested by the adversarial process." *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 614 (2019).

On April 8, 2023, the first day of Virginia's 2023 spring turkey hunting season, Highlander, his father, and his brother each went hunting. Highlander was on his property; his father and brother were on the other properties. Highlander shot and harvested a turkey on his property around 7:45 a.m., "hundreds of yards away from his food plot," and then logged the kill on the Department's mobile app.

That same day, Krista Adams, Zach Howlett, and Bonnie Braziel, conservation police officers with the Department, entered the properties on which Highlander's brother and father were hunting and seized at least three cameras.[2] The officers then entered Highlander's property, around 2:45 p.m., because they suspected Highlander of illegally hunting turkey over bait as well. To access Highlander's property, the officers drove to a nearby subdivision, parked a few hundred yards from Highlander's property line, and crossed a separate parcel of private property. Wearing full camouflage outfits, the officers entered Highlander's property and explored until they found Highlander's food plot. Seeing Highlander's wildlife camera, the officers seized it and left the property.

While the officers were exploring the property, Highlander's wife, who was in the backyard playing basketball with the couple's son, noticed one of the officers walking in the woods. Not knowing who it was, she took her son inside and told Highlander. The officers had left by the time Highlander went outside to look.

Adams later searched the camera for pictures of illegal activity. Adams opened the camera, removed the storage card, and downloaded thousands of photos. The officers did not seek or obtain a warrant to search the property, seize the camera, or search the camera. Adams later obtained a

---

[2] The officers cited Highlander's brother for hunting turkey over bait, a charge which Highlander's brother is contesting.

search warrant directed to Tactacam for any additional photos taken by Highlander's camera that had been wirelessly uploaded and stored by Tactacam.

Highlander sued the Department and the officers in their individual and official capacities, alleging that the searches and seizure violated his rights under Article I, § 10 of the Constitution of Virginia and Code §§ 19.2-60 and -59. Highlander further alleged that the Department has a policy and practice of conducting warrantless searches and seizures like the ones the officers engaged in on April 8, 2023.

Highlander's complaint sought wide-ranging relief, including: a judgment declaring the searches and seizures of his property violated the Constitution of Virginia; a judgment declaring that the Department's policy and practice of warrantless searches and seizures violates the Constitution of Virginia; a permanent injunction barring the Department from conducting any warrantless searches and seizures of his property; an injunction under Code § 19.2-60 or the circuit court's equitable power requiring the return of his camera[3] and the return or destruction of any photos the Department found on his camera and any notes they created based on those photos, and the suppression of those materials; and nominal damages against the individual officers employed by the Department for their search of the camera.

The Department filed a plea in bar, arguing that Highlander's claims were barred by sovereign immunity because Article I, § 10 is not self-executing and neither Code § 19.2-59 nor Code § 19.2-60 waives the Commonwealth's immunity. They also demurred, arguing that even if sovereign immunity did not apply, Highlander had failed to state a cause of action upon which the requested relief could be granted. The Department argued that neither Article I, § 10 nor Code § 19.2-60 creates a private right of action, so none of the claims for relief under them stated a cause

_____

[3] The Department returned Highlander's camera while the proceedings were pending. Highlander acknowledged that request for relief was satisfied but maintained his other requests for relief.

- 4 -

of action. In addition, the Department argued that none of the challenged actions was unlawful, so Highlander had failed to state a claim even if Article I, § 10 or Code § 19.2-60 provides a right of action. Finally, the Department argued that Code § 19.2-59 applies only to individual officers, not the Department as a state agency, and, as alleged, Highlander's claim applied only to Adams. The Department also argued that Adams was entitled to sovereign immunity because even if her search of the camera was unlawful, it did not amount to gross negligence.

After a hearing, the circuit court sustained the plea in bar and demurrer with prejudice. The circuit court concluded that Article 1, § 10 is not self-executing and therefore does not create a private right of action. The circuit court thus concluded that sovereign immunity barred Highlander's constitutional claims. The court also concluded that under the "open fields doctrine," the officers' intrusion onto Highlander's property was not an unreasonable search.[4] Thus, the court dismissed Highlander's claims related to the initial entry onto his property on the alternative ground that the search of the property was lawful. The court did not separately analyze the permissibility of the seizure of the camera or the search of the camera or explain its dismissal of the statutory claims relating to the seizure and search of the camera.

Highlander timely appealed. He argues that the circuit court erred by holding Article I, § 10 is not self-executing; concluding that the search of his land was permissible; and dismissing each of his claims. Highlander's arguments on appeal can be broadly characterized as challenging the search of the property, the seizure of the camera, and the search of the camera. For each category, Highlander asserts rights of action arising from multiple sources of law and requests multiple forms of relief. For example, in challenging the search of the property, Highlander asserts claims under both Article I, § 10 *and* Code § 19.2-60, and he seeks multiple injunctions and

---

[4] At oral argument, the Department argued that, in addition to the "open fields" doctrine, the "plain view" doctrine also applied to permit the agents warrantless seizure of the camera.

- 5 -

declaratory judgments, as well as suppression of evidence in future criminal proceedings. Our analysis considers the source of law for each claim and the relief requested under each source.

ANALYSIS

"Absent a statutory requirement to do so, 'a trial court is not required to give findings of fact and conclusions of law.'" *Pilati v. Pilati*, 59 Va. App. 176, 180 (2011) (quoting *Fitzgerald v. Commonwealth*, 223 Va. 615, 627 (1982)). "[W]hen no specific explanation is given by a trial court, we presume the court followed the governing legal principles . . . ." *Id.* at 181; *see White v. White*, 56 Va. App. 214, 217 (2010) ("In Virginia, 'we presume [trial] judges know the law and correctly apply it.'" (alteration in original) (quoting *de Haan v. de Haan*, 54 Va. App. 428, 445 (2009))). Thus, we assume that the court sustained appellees' demurrer to the statutory claims on one or more of the grounds stated in the demurrer.[5] *See Pilati*, 59 Va. App. at 181; *see also, e.g.*, *Almy v. Grisham*, 273 Va. 68, 76 (2007) (reviewing legal sufficiency of plaintiff's pleadings on appeal under the right-result-wrong-reason doctrine despite lower court having erroneously decided a demurrer on the merits).

We review de novo the circuit court's judgment sustaining a demurrer. *Theologis v. Weiler*, 76 Va. App. 596, 603 (2023). "The purpose of a demurrer is to determine whether the pleading and any proper attachments state a cause of action upon which relief can be given." *Young-Allen v. Bank of Am.*, 298 Va. 462, 467 (2020) (quoting *Steward v. Holland Fam. Props., LLC*, 284 Va. 282, 286 (2012)). "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Seymour v. Roanoke Cnty. Bd. of Supervisors*, 301 Va. 156, 164 (2022) (quoting *Coutlakis v. CSX Transp., Inc.*, 293 Va. 212, 216 (2017)). Thus, "[a]

---

[5] "No grounds other than those stated specifically in the demurrer shall be considered by the court." Code § 8.01-273(A). So, "we may affirm an order sustaining a demurrer only on a ground that the defendant raised in the trial court." *Theologis v. Weiler*, 76 Va. App. 596, 604 (2023).

circuit court 'is not permitted on demurrer to evaluate and decide the merits of the allegations set forth in a . . . complaint.'" *Id.* (second alteration in original) (quoting *Riverview Farm Assocs. Va. Gen. P'ship v. Bd. of Supervisors*, 259 Va. 419, 427 (2000)). "In deciding whether to sustain a demurrer, the sole question before the trial court [and before this Court on appeal] is whether the facts pleaded, implied, and fairly and justly inferred are legally sufficient to state a cause of action against a defendant." *Pendleton v. Newsome*, 290 Va. 162, 171 (2015). As previously noted, "we accept as true all factual allegations expressly pleaded in the complaint and interpret those allegations in the light most favorable to the plaintiff." *Coward v. Wellmont Health Sys.*, 295 Va. 351, 358 (2018). "But we are not bound by the pleader's conclusions of law that are couched as facts." *Theologis*, 76 Va. App. at 600.

"A plea in bar asserts a single issue, which, if proved, creates a bar to a plaintiff's recovery." *Massenburg v. City of Petersburg*, 298 Va. 212, 216 (2019) (quoting *Hawthorne v. VanMarter*, 279 Va. 566, 577 (2010)). "'[W]here no evidence is taken in support of a plea in bar, the trial court, and the appellate court upon review, consider solely the pleadings in resolving the issue presented. In doing so, the facts stated in the plaintiff's [complaint] are deemed true.'" *Id.* (second alteration in original) (quoting *Lostrangio v. Laingford*, 261 Va. 495, 497 (2001)). As with the demurrer, we presume the circuit court followed these principles. *See Pilati*, 59 Va. App. at 181. Under this approach, our review of the circuit court's judgment is "functionally de novo." *Massenburg*, 298 Va. at 216.

## I. Article I, § 10 Claims

Highlander brought most of his claims for declaratory and injunctive relief under Article I, § 10 of the Constitution of Virginia. Highlander argues that the officers' search of his property, seizure of his camera, and subsequent search of the camera each violated that provision, which states:

> That general warrants, whereby an officer or messenger may be commanded to search suspected places without evidence of a fact committed, or to seize any person or persons not named, or whose offense is not particularly described and supported by evidence, are grievous and oppressive, and ought not to be granted.

Va. Const. art. I, § 10. The Department argues that Article I, § 10 does not support a private right of action, so sovereign immunity bars Highlander's constitutional claims. These arguments raise questions of constitutional interpretation, which we review de novo. *Walker v. Commonwealth*, 302 Va. 304, 314 (2023).

No Virginia appellate court has decided whether individuals may bring a right of action under Article I, § 10.[6] Ordinarily, when deciding whether an individual may assert a novel claim to enforce a constitutional provision, "the dispositive issue . . . is whether the[] constitutional provision[] [is] self-executing." *Gray v. Va. Secy. of Transp.*, 276 Va. 93, 102 (2008). Recognizing this principle, the parties devote considerable energy debating whether Article I, § 10 is self-executing. We need not resolve the debate here, however, because even if Article I, § 10 provides a right of action and bars the actions Highlander challenges, he would not be entitled to the declaratory and injunctive relief he seeks.

"[T]he doctrine of judicial restraint dictates that [the Court] decide cases 'on the best and narrowest grounds available.'" *Commonwealth v. White*, 293 Va. 411, 419 (2017) (quoting *Commonwealth v. Swann*, 290 Va. 194, 196 (2015)). "The 'best' answer to a legal question is the one with which the least number of jurists would disagree," and "[t]he 'narrowest' answer to a legal question is the one affecting the least number of cases." *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020). One "fundamental and longstanding precept of this doctrine is that 'unnecessary adjudication of a constitutional issue' should be avoided." *Swann*, 290 Va. at 196

---

[6] We have held that Article 1, § 11 of the Constitution of Virginia is self-executing. *See Ibanez v. Albemarle Cnty. Sch. Bd.*, 80 Va. App. 169 (2024).

- 8 -

(quoting *Bell v. Commonwealth*, 264 Va. 172, 203 (2002)). "[I]f a case can be decided on either of two grounds, one involving a constitutional question, the other a question of statutory construction or general law, the Court will decide only the latter." *Taylor v. Commonwealth*, 78 Va. App. 147, 157 (2023) (quoting *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring)).

The doctrines of judicial restraint and constitutional avoidance dovetail with the right-result-different-reason doctrine, under which this Court will "not hesitate, in a proper case, where the correct conclusion has been reached but the wrong [or a different] reason given, to sustain the result and assign the right ground." *Taylor v. Northam*, 300 Va. 230, 251 (2021) (alteration in original) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)). The doctrine "does not apply where the development of additional facts is necessary." *Spinner v. Commonwealth*, 297 Va. 384, 391 (2019). But the Court is "entitled to affirm the [circuit] court's judgment on alternate grounds[] if such grounds are apparent from the record." *Taylor*, 300 Va. at 251 (emphasis omitted) (quoting *Perry v. Commonwealth*, 280 Va. 572, 582 (2010)). Thus, "this Court may affirm a [judgment] . . . without 'express[ing a] view on the correctness of the lower court's rationale.'" *Eberhardt v. Commonwealth*, 74 Va. App. 23, 39 n.10 (2021) (second alteration in original) (quoting *Rickman v. Commonwealth*, 294 Va. 531, 542 (2017) (emphasis omitted)). When a lower court rules on a constitutional issue, but the right-result-different-reason doctrine allows the Court to affirm the judgment without expressing a view on the constitutional issue, the constitutional avoidance doctrine requires the Court to do so. *See, e.g.*, *Haynes v. Haggerty*, 291 Va. 301, 305 (2016) (considering the right-result-wrong-reason argument first "to avoid reaching" the constitutionality of a statutory provision).

Still, where the appeal involves review of an order sustaining a demurrer, "Code § 8.01-273 prevents us from applying [the right-result-different-reason] doctrine to permit an appellee to benefit from an argument that he did not include in his . . . demurrer." *Theologis*, 76 Va. App. at 604. Thus, we may only affirm the court's order sustaining the demurrer on alternative non-constitutional grounds if the Department pleaded those grounds. *Id.*

For the search of his property, the seizure of his camera, and the search of his camera, Highlander sought five forms of relief under Article I, § 10:

> (A) a declaratory judgment that the search or seizure was illegal;
>
> (B) a declaratory judgment that the Department's policy and practice of similar searches or seizures is illegal;
>
> (C) a permanent injunction prohibiting the Department from conducting a warrantless search or seizure of Highlander's property without consent;
>
> (D) return or destruction of photographs seized from his camera and related notes; and
>
> (E) suppression of photographs seized from his camera and related notes in future criminal proceedings.

We analyze each of Highlander's requests for relief in turn.

A. *Declaratory judgment against the searches and seizure of Highlander's property*

Highlander seeks a "judgment declaring that [appellees'] warrantless search of [his] land, warrantless seizure of his camera, and warrantless search of his camera violated the Virginia Constitution." But a declaratory judgment is not available under the circumstances presented here. As the Department noted in their demurrer, declaratory judgments are not available to adjudicate rights retrospectively. *Charlottesville Area Fitness Club Operators Ass'n v. Albemarle Cnty. Bd. of Supervisors*, 285 Va. 87, 98-99 (2013). "Preventive relief is the moving purpose" of the Declaratory Judgment Act. *Id.* at 99 (quoting *Williams v. Southern Bank of Norfolk*, 203 Va. 657, 662 (1962)).

- 10 -

Courts are empowered only "to issue declaratory judgments to resolve disputes '*before the right is violated.*'" *Id.* at 98 (emphasis added) (quoting *Patterson v. Patterson*, 144 Va. 113, 120 (1926)). "[W]here claims and rights asserted have fully matured, and the alleged wrongs have already been suffered, a declaratory judgment proceeding . . . is not an available remedy." *Id.* at 99. Highlander's claims and rights relating to the search of his land, the seizure of his camera, and the search of his camera have fully matured. He has already suffered the alleged wrongs. Therefore, declaratory judgments addressing the searches and seizure are unavailable. *See id.* We affirm the circuit court's judgment sustaining appellees' demurrer to Highlander's claims for a declaratory judgment challenging conduct that has already occurred.

B. *Declaratory judgment against the Department's alleged policy and practice of warrantless searches and seizures*

Highlander also requests "[a] judgment declaring that [appellees'] policy and practice of warrantless searches of posted private land, warrantless camera seizures, and warrantless camera searches[] violates the Virginia Constitution."

Courts have authority to issue declaratory judgments only when a case presents a "justiciable controversy." *Daniels v. Mobley*, 285 Va. 402, 407-09 (2013). "This requirement is explicitly set forth in the statute authorizing declaratory judgment actions, empowering circuit courts 'to make binding adjudications of right' in 'cases of actual controversy' where there is an 'actual antagonistic assertion and denial of right.'" *Lafferty v. Sch. Bd. of Fairfax Cnty.*, 293 Va. 354, 360 (2017) (quoting Code § 8.01-184). A justiciable controversy "involves an actual adjudication of rights" resolving "'specific adverse claims, based upon present, rather than future or speculative facts.'" *Daniels*, 285 Va. at 408 (quoting *City of Fairfax v. Shanklin*, 205 Va. 227, 229 (1964)). "For a justiciable controversy to exist, it must be possible for the circuit court to render a decree yielding specific relief, such that the plaintiff's rights will be thereby affected." *Id.* "[T]he declaratory judgment statute was not intended to vest [courts] with authority[] to

- 11 -

render advisory opinions, to decide moot questions or to answer inquiries which are merely speculative." *Charlottesville Fitness*, 285 Va. at 99 (quoting *Shanklin*, 205 Va. at 229-30).

The Department did not assert the lack of a justiciable controversy in their demurrer. Even so, "[i]t is beyond question that this Court may consider, *sua sponte*, whether a requisite justiciable controversy exists under the declaratory judgment statute." *Daniels*, 285 Va. at 408. Indeed, we are obligated to raise this question because "we do not have the power to render a judgment that is only advisory." *Charlottesville Fitness*, 285 Va. at 100.

Highlander fails to plausibly allege a justiciable controversy between himself and the Department over their alleged policies and practices of warrantless searches and seizures. The implied threat Highlander seeks to ameliorate through the requested judgment is a future warrantless search or seizure of his property by the Department. Any such threat is fatally speculative. Even assuming that the Department regularly employs the alleged policies and practices, there is no "specific adverse claim[]" between Highlander and the Department "based upon present, rather than future or speculative facts." *Daniels*, 285 Va. at 408 (quoting *Shanklin*, 205 Va. at 229).

In *Lafferty*, our Supreme Court concluded that a public high school student had failed to allege a justiciable controversy between himself and the school board arising from the school board's expansion of its anti-discrimination and anti-harassment policy to include the category of "sexual orientation." 293 Va. at 358, 360-62 (examining facts as pleaded in the complaint and affirming circuit court's judgment dismissing the complaint for lack of standing). The student alleged, among other things, that he was "distressed" by the policy because he feared the possible future applications of the policy and how that might affect him. *Id.* at 358-59. The Supreme Court held that the student's hypothesized harm rested on "a purely speculative fact" not clearly supported by the record. *Id.* at 361-62. Similarly, the student had failed to "allege

any *present facts* that would place him in violation of the policy, rendering any injury purely speculative." *Id.* at 361 (emphasis added). "[G]eneral distress over a general policy does not alone allege injury sufficient for standing, even in a declaratory judgment action." *Id.* at 362.

Here, Highlander's complaint alleges that appellees' "ongoing policy and practice of warrantless searches have made it impossible for Mr. Highlander and his family to enjoy the full degree of privacy from intruders that they expect on their land." He alleges that he and his family "experience anxiety over the fact that [Department] officers can sneak around their property and spy on them whenever the officers please," and he has refrained from placing another wildlife camera given his fear that officers will take it, and has been prevented from hunting on his land by fear that he will "accidentally shoot a [Department] officer" of whose presence he is unaware.

Crediting these fears as genuine, none constitutes a "specific adverse claim[]" involving "present rather than future or speculative facts." *Lafferty*, 293 Va. at 361 (emphasis omitted). Even assuming the Department's alleged policies inevitably would lead to another search or seizure of Highlander's property,[7] such an interaction between the Department and Highlander could take any number of forms, with a multitude of possible predicate facts. But speculating about possible future actions does not satisfy Highlander's obligation to plead *present* facts upon which a court can render a judgment. *See Jones v. Commonwealth*, 277 Va. 171, 177 (2009) (noting the legality of a seizure is "a mixed question of law and fact" (quoting *McCain v. Commonwealth*, 275 Va. 546, 551 (2008))); *cf. Mosher Steel-Virginia v. Teig*, 229 Va. 95 (1985) (holding that plaintiff's challenge to a general inspection warrant was justiciable because the interest at stake was not "hypothetical or abstract"; rather the plaintiff's rights were

---

[7] As discussed below, the complaint's allegations do not lead to the conclusion that a future illegal search or seizure of Highlander's property is inevitable, or even reasonably probable.

"'immediately threatened'" (quoting *Gooden v. Brooks*, 251 S.E.2d 698, 701 (N.C. App. 1979))).

By the same token, a declaratory judgment relating to appellees' alleged policies or practices of warrantless searches and seizures would not "yield[] specific relief, such that [Highlander]'s rights will be thereby affected." *Daniels*, 285 Va. at 408. A declaration based only upon speculation would amount to a purely advisory opinion, which we are without power to render. *Charlottesville Fitness*, 285 Va. at 99-100.

Highlander's request for a declaratory judgment against appellees' alleged policies and practices of warrantless searches and seizures, therefore, does not present a justiciable controversy, and the circuit court "did not have authority under the declaratory judgment statute to exercise jurisdiction concerning such claim." *Daniels*, 285 Va. at 413. Thus, we vacate the circuit court's judgment addressing the policy and practice claims and dismiss them for lack of jurisdiction. *See id.* at 412-13.

C. *Permanent injunction against future warrantless searches and seizures without consent*

Highlander also requests "[a] permanent injunction barring [appellees] from searching [his] land, seizing his cameras, or searching his cameras without his consent or a warrant moving forward."

"[N]o prohibitory injunction against an anticipated wrong will issue unless 'there is reasonable cause to believe that the wrong is one that would cause irreparable injury and the wrong is actually threatened or apprehended with reasonable probability . . . .'" *Large v. Clinchfield Coal Co.*, 239 Va. 144, 148 (1990) (second alteration in original) (quoting *WTAR Radio-TV Corp. v. City Council of Virginia Beach*, 216 Va. 892, 895 (1976)). Additionally, "[t]o secure an injunction, a party must show . . . the lack of an adequate remedy at law." *Preferred Sys. Sols., Inc. v. GP Consulting, LLC*, 284 Va. 382, 401 (2012) (first alteration in original) (quoting *Black & White Cars v. Groome Transp., Inc.*, 247 Va. 426, 431 (1994)).

Highlander's complaint alleges that appellees' policies and practices of warrantless searches and seizures simultaneously cause him a present, ongoing irreparable injury *and* create an imminent threat of further irreparable injury. He alleges that unless the policies and practices are enjoined, the Department "will continue to conduct warrantless searches and seizures of [his] land and cameras (if not other property), and he and his family will continue to suffer" the injuries previously described, including anxiety over the possibility of future searches and hesitation to place another wildlife camera or hunt on his land.

Appellees' demurrer argued that Highlander had failed to allege irreparable harm. We agree. Highlander has not sufficiently alleged that he is presently suffering irreparable harm. And the possibility of future harm alleged in the complaint is too speculative to provide a basis for injunctive relief.

Neither party has cited a case in which a Virginia court has approved an injunction to remedy a pattern or practice of allegedly unconstitutional conduct by law enforcement officers. Still, injunctive relief is available in Virginia in limited circumstances to remedy a present constitutional violation or prevent a future constitutional violation. *See Gray*, 276 Va. at 97-107 (holding plaintiffs could seek declaratory and injunctive relief to remedy allegedly unconstitutional delegation of power by various entities and officials of the Commonwealth); *Mosher Steel-Virginia*, 229 Va. at 99-105 (granting declaratory and injunctive relief to prevent enforcement of unconstitutional general inspection warrant); *see also DiGiacinto v. Rector & Visitors of Geo. Mason Univ.*, 281 Va. 127, 137-38 (2011) (noting "sovereign immunity does not preclude declaratory and injunctive relief claims based on self-executing provisions of the Constitution of Virginia").

Additionally, federal courts have long recognized that "[w]here . . . there is a persistent pattern of police misconduct, injunctive relief is appropriate."[8] *Allee v. Medrano*, 416 U.S. 802, 815 (1974) (concluding injunction would be appropriate against police officers who engaged in a series of unconstitutional acts against labor union organizers); *see, e.g.*, *Lankford v. Gelston*, 364 F.2d 197 (4th Cir. 1966) (upholding injunctive relief barring future searches based on uncorroborated anonymous tips after police searched more than 300 locations—mostly private residences owned by black citizens—searching for a fugitive); *Smith v. City of Chicago*, 143 F. Supp. 3d 741, 751-52 (N.D. Ill. 2015) (concluding that plaintiffs plausibly alleged claims for injunctive relief based on a pattern or practice of unconstitutional stops and frisks by police).

Assuming without deciding that injunctive relief is available in Virginia to remedy a pattern or practice of unconstitutional police searches and seizures, we conclude that Highlander fails to allege such a pattern or practice in this case. The deficiencies in Highlander's allegations are two-fold and compound one another. First, Highlander fails to plausibly allege a pattern or practice of illegal searches and seizures in more than conclusory terms. Second, Highlander fails to allege that he is imminently threatened by the pattern or practice, even if one exists.

Highlander alleges that the Department "has a longstanding policy and practice of entering posted private land without the owner's consent, a warrant, or even probable cause, to search around for evidence of potential hunting violations." He similarly alleges that the Department has policies and practices of placing surveillance cameras on posted private land, seizing privately owned cameras, and searching privately owned cameras—all without consent, a warrant, or probable cause. But he fails to support these conclusory allegations with facts showing that the Department has adopted such policies or practices. He points to no express

---

[8] Generally, in "a case of first impression in Virginia, we look to the decisions of other jurisdictions for aid and guidance." *Nationwide Mut. Ins. Co. v. Wenger*, 222 Va. 263, 266 (1981).

written policy, for example, nor any related oral instructions Department leaders have given to conservation officers, or any pattern of instances in which Department leaders have implicitly approved warrantless searches and seizures. *See, e.g.*, *Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (discussing ways in which a 42 U.S.C. § 1983 plaintiff can prove a municipality has adopted a policy or practice). In reviewing a complaint on demurrer, "we do not accept the veracity of conclusions of law camouflaged as factual allegations or inferences." *Patterson v. City of Danville*, 301 Va. 181, 197 (2022) (quoting *Doe ex rel. Doe v. Baker*, 299 Va. 628, 641 (2021)). Rather, "factual allegations 'must be made with "sufficient definiteness to enable the court to find the existence of a legal basis for its judgment."'" *A.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 613 (2019) (quoting *Squire v. Virginia Hous. Dev. Auth.*, 287 Va. 507, 514 (2014)).

Similarly, Highlander claims, without any factual support, that the Department's "policy and practice" of warrantless searches and seizures "is widespread" and "ongoing." Of course, "a policy or practice that is widespread is more likely to cause recurring injury than an isolated practice." *Amadei v. Nielsen*, 348 F. Supp. 3d 145, 160 (S.D.N.Y. 1999) (concluding plaintiffs had standing to seek equitable relief because they plausibly alleged a sufficient likelihood of being subjected to future illegal searches by defendants).[9] But Highlander does not support his conclusory assertion that the Department's alleged policy is "widespread" with specific facts. For example, he did not allege any instance of Department officers engaging in similar illegal

---

[9] In federal cases, the issue of whether a plaintiff has sufficiently pleaded a likelihood of future injury from an unconstitutional pattern or practice often arises through a challenge to the plaintiff's standing. The United States Supreme Court has noted, however, that considerations relating to standing "obviously shade into those determining whether the complaint states a sound basis for equitable relief" because both inquiries must assess whether the plaintiff has alleged a sufficient injury. *Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 499 (1974)). Thus, determining a plaintiff's standing substantially overlaps with determining whether the plaintiff has alleged a threatened injury sufficient to justify injunctive relief. *See id.* at 103-13.

behavior beyond the searches and seizures the Department conducted on April 8, 2023. A single instance is insufficient to establish a policy or custom, let alone one that is "widespread." *See, e.g.*, *McLennon v. City of New York*, 171 F. Supp. 3d 69, 103-06 (E.D.N.Y. 2016) (concluding plaintiffs lacked standing to seek injunctive relief from allegedly unconstitutional police checkpoints along a highway because plaintiffs failed to plausibly allege that the practice was "widespread" or that they had been unlawfully stopped repeatedly); *see also Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994) (noting that "a policy or custom of deficient training . . . can[not] be shown by proof of a single incident of unconstitutional activity"); *WTAR*, 216 Va. at 893-96 (holding that allegations that city council had previously violated the Virginia Freedom of Information Act, without more, failed to support "with reasonable probability" the plaintiffs' apprehension that the city council would violate the Act again in the future).

The conclusory nature of the allegations describing the policies similarly undermines Highlander's assertion that he is "actually threatened" by the possibility of future illegal searches and seizures, or that such a threat is "apprehended with reasonable probability." *Large*, 239 Va. at 148 (quoting *WTAR*, 216 Va. at 895). As Highlander's complaint acknowledges, Department officers "patrol the vast and diverse geographical expanses of the Commonwealth." Highlander does not, with a level of specificity that would render his likelihood of injury "reasonably probable," differentiate himself from other landowners across "the vast and diverse geographical expanses" whom the Department might subject to future searches and seizures. Highlander does not allege that the Department applies the policies on the basis of race, ethnicity, or nationality, or to a specific, limited geographical area—circumstances that courts have recognized as sufficiently demonstrating a likelihood that a plaintiff or plaintiffs will be subject to an unconstitutional pattern or practice in the future. *See, e.g.*, *Melendres v. Arpaio*, 784 F.3d 1254 (9th Cir. 2015) (affirming, in part, injunction against sheriff's office pattern and practice of searching plaintiffs based on

- 18 -

immigration status); *Johnson v. McCowan*, 549 F. Supp. 3d 469, 476-79 (W.D. Va. 2021) (finding standing to seek injunctive relief because plaintiff sufficiently pleaded likelihood of future harm from correctional facility's use of dogs to control prisoners because plaintiff remained incarcerated and would inevitably encounter law enforcement officials again); *Roe v. City of New York*, 151 F. Supp. 2d 495, 502-07 (S.D.N.Y. 2001) (concluding plaintiffs had standing to challenge police "practice of targeting for unlawful arrest persons in 'high drug areas' such as neighborhoods around needle exchange programs the plaintiffs frequent"). Nor does Highlander allege that he has been subjected to repeated illegal searches. *See WTAR*, 216 Va. at 895 ("A previous course of conduct may raise an inference that such conduct will be repeated."); *Ligon v. City of New York*, 288 F.R.D. 72, 81 (S.D.N.Y. 2013) ("The possibility of recurring injury ceases to be speculative when actual repeated incidents are documented." (quoting *Nicacio v. United States Immigr. & Naturalization Serv.*, 768 F.2d 1133, 1136 (9th Cir. 1985))).

In sum, Highlander fails to assert supporting facts that the Department has policies or common practices of illegal searches and seizures, and fails to plausibly allege that there is a "reasonable probability" that he is threatened with a future injury by any such policy or practice. *Large*, 239 Va. at 148 (quoting *WTAR*, 216 Va. at 895). We similarly conclude that Highlander fails to sufficiently allege that he is presently suffering irreparable injury. Just as "general distress over a general policy does not alone allege injury sufficient for standing," *Lafferty*, 293 Va. at 362, "[t]he emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant," *Los Angeles v. Lyons*, 461 U.S. 95, 107 n.8 (1983) ("It is the *reality* of the threat of repeated injury that is relevant to the standing inquiry, not the plaintiff's subjective apprehensions."). Therefore, we affirm the circuit court's judgment sustaining the demurrer to Highlander's claims for a permanent injunction against future searches and seizures by appellees.

D. *Injunction requiring the return or destruction of Highlander's photographs and any notes created by the Department based on the photographs*

Highlander's complaint sought "[a]n order enjoining [appellees] to return or destroy any photos they have accessed, including any notes they have created based on those photos." The same fundamental principles apply to this request for injunctive relief as to Highlander's request for a permanent injunction against future searches and seizures: "a party must establish the 'traditional prerequisites, i.e., irreparable harm and lack of an adequate remedy at law' before a request for injunctive relief will be sustained." *Levisa Coal Co. v. Consolidation Coal Co.*, 276 Va. 44, 61 (2008) (quoting *Virginia Beach S.P.C.A., Inc. v. South Hampton Rds. Veterinary Assoc.*, 229 Va. 349, 354 (1985)). An irreparable injury is one for which "fair and reasonable redress may not be had in a court of law and [for which] to refuse the injunction would be a denial of justice." *Thompson v. Smith*, 155 Va. 367, 387 (1930).

The Supreme Court of Virginia has stated with respect to injunctions to enforce personal property rights:

> Unless the plaintiff can demonstrate that the property [he] seeks to protect has some personal value of sentiment or other intangible quality that cannot be restored to him at law or that monetary damages would otherwise not make him whole, the court will deny the injunction because the legal remedy is sufficient.

*Levisa Coal Co.*, 276 Va. at 62 (citation omitted) (discussing injunctions to enforce contract rights). Highlander does not allege that the photographs the Department seized have a personal value or other intangible quality that cannot be restored to him at law. *Cf. Malik v. United States Dep't of Homeland Sec.*, 78 F.4th 191, 198-99 (5th Cir. 2023) (concluding plaintiff had standing to request injunction requiring destruction of data seized from his phone where "DHS's ongoing possession of [plaintiff]'s data plausibly constitute[d] an ongoing injury" because "[a]t minimum, he . . . plausibly alleged that the phone contains work-product privileged materials"). Code §§ 19.2-59 and -60 provide remedies at law through an action for damages, which

Highlander has already brought, or a motion for the suppression and return of the photographs and related notes in any future criminal proceeding. Highlander has not alleged any specific concerns regarding the use of the photographs that would not be remedied by these provisions. Because Highlander fails to demonstrate the lack of an adequate remedy at law for the photographs and related notes, we affirm the circuit court's judgment sustaining appellees' demurrer to the statutory claims for injunctive relief.

## E. *Suppression of evidence in future cases*

Finally, Highlander seeks suppression of "any photos [appellees] have accessed, including any notes they have created based on those photos." But "[t]o secure an injunction, a party must show . . . the lack of an adequate remedy at law." *Preferred Sys. Sols., Inc.*, 284 Va. at 401 (quoting *Black & White Cars, Inc.*, 247 Va. at 431). Code § 19.2-60 provides that "[a] person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence." While Highlander is certainly entitled to recover any of his property seized by the Department that is not to be used as evidence against him in a criminal prosecution, the injunctive relief he seeks here is not the appropriate mechanism to do so. The complaint does not allege any pending criminal proceeding against Highlander, nor does it allege that he would be unable to invoke the statutory procedures to suppress the use of the photographs or related notes in any future criminal proceeding. Thus, Highlander fails to plead that he lacks an adequate remedy at law to address the potential future use of the photographs and

related notes as evidence.[10] *Preferred Sys. Sols., Inc.*, 284 Va. at 401. On this basis, we affirm the circuit court's judgment sustaining the demurrer to Highlander's statutory suppression claims.

In sum, we affirm the circuit court's judgment sustaining the demurrer to each of Highlander's claims under Article I, § 10, except for the request for a declaratory judgment against appellees' alleged policies and practices of warrantless searches and seizures. We vacate the circuit court's judgment on the policy and practice claims and dismiss them for lack of jurisdiction.[11]

## II. Code § 19.2-60 Claims

As an alternative to his constitutional claims, Highlander seeks relief under Code § 19.2-60 for the allegedly illegal searches and seizure. That statute provides, in relevant part, as follows:

> A person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence. The court shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted by a court of record, any seized property shall be restored as soon as practicable unless otherwise subject to lawful detention, and such property shall not be admissible in evidence at any hearing or trial.

Code § 19.2-60.

No court has held that Code § 19.2-60 creates a cause of action. Rather, "Code § 19.2-60 is a procedural statute." *Troncoso v. Commonwealth*, 12 Va. App. 942, 943 (1991). "It provides

---

[10] Indeed, as noted below, Highlander sought relief under Code § 19.2-60 which provides a procedure to be followed for the return of his property. "A person aggrieved by an allegedly unlawful search or seizure may move the court to return any seized property and to suppress it for use as evidence." Code § 19.2-60.

[11] We express no view on the circuit court's judgment sustaining the plea in bar of sovereign immunity.

for the making of a motion to return property illegally seized and to suppress the introduction of that property as evidence." *Id.* In context, Code § 19.2-60 is simply a procedure available in criminal cases that provides a statutory mechanism for *both* the suppression of illegally seized evidence but also for its return if not contraband. "[W]e do not infer a private right of action when the General Assembly expressly provides for a different method of judicial enforcement." *Cherrie v. Va. Health Servs., Inc.*, 292 Va. 309, 316 (2016). Because we find no "palpable" evidence that the General Assembly intended to create a right of action through Code § 19.2-60 or that the statutory scheme necessarily implies it, we decline to recognize one. *NAACP (Hanover Cnty. Chapter) v. Commonwealth*, 74 Va. App. 702, 715 (2022) (quoting *Michael Fernandez, D.D.S., Ltd. v. Comm'r of Highways*, 298 Va. 616, 618 (2020)). Thus, the circuit court properly sustained appellees' demurrer.

### III. Code § 19.2-59 Claims

Highlander also seeks damages under Code § 19.2-59 for Adams's search of the camera. "Code § 19.2-59 prohibits warrantless searches of any place, thing, or person and provides that any officer performing such a search shall be 'liable to any person aggrieved thereby in both compensatory and punitive damages.'" *Cromartie v. Billings*, 298 Va. 284, 296 (2020). The statute thus "creates a cause of action against law enforcement officers and other government agents." *Id.* at 296-97.

As with other tort claims against the Commonwealth, "[s]overeign immunity . . . applies to actions brought under section 19.2-59." *Id.* at 297 (second alteration in original) (quoting *Burnham v. West*, 681 F. Supp. 1169, 1172 (E.D. Va. 1988)). But "Virginia's sovereign immunity doctrine protects officers only for simple negligence." *Id.* It "does not protect one who 'acts wantonly, or in a culpable or grossly negligent manner.'" *Id.* (quoting *James v. Jane*, 221 Va. 43, 53 (1980)). Under this standard, a law enforcement officer's violation of an

- 23 -

individual's constitutional rights exceeds simple negligence if it violates "settled, indisputable law." *Id.* at 298 (quoting *Burnham*, 681 F. Supp. at 1173).

"Code § 19.2-59 'has been consistently held to provide only the same protection as that afforded by the Fourth Amendment.'" *Id.* at 297 (quoting *Burnham*, 681 F. Supp. at 1173). Thus, if an officer's search violates well-established Fourth Amendment law, sovereign immunity does not protect the officer from liability under Code § 19.2-59. *Id.* at 299. So, the issues presented are whether the alleged search of the camera violated the law and, if so, whether the law was "well-established" when the search occurred.[12] *Id.* For the following reasons, we conclude that Highlander pled sufficient facts alleging that its search was illegal and that well-established law was clear that the Adams's search of the camera was constitutionally infirm.

"[T]he Fourth Amendment protects the right of the people to be secure in their persons, houses, papers, *and effects*, against unreasonable searches and seizures." *Hurley v. Commonwealth*, 36 Va. App. 83, 88 (2001) (quoting *United States v. Place*, 462 U.S. 696, 700-01 (1983)). Personal property such as a package, a vehicle, or a cell phone is thus entitled to Fourth Amendment protection against warrantless search and seizure. *See id.* (sealed package); *Riley v. California*, 573 U.S. 373 (2014) (cell phone); *United States v. Jones*, 565 U.S. 400 (2012) (vehicles).

The Department argues that Highlander did not have a reasonable expectation of privacy in his camera because it was located in an open field, so Adams's search of the camera was not a "search" under the Fourth Amendment. *See Salahuddin v. Commonwealth*, 67 Va. App. 190, 202-03 (2017) ("Since the Supreme Court's decision in *Katz v. United States*, 389 U.S. 347 (1967), 'the touchstone' of Fourth Amendment analysis has been 'the question whether a person

---

[12] Highlander's complaint seeks relief under Code § 19.2-59 only for the search of the camera, therefore we do not address its seizure.

has a "constitutionally protected reasonable expectation of privacy."'" (quoting *Oliver v. United States*, 466 U.S. 170, 177 (1984))). We disagree because United States Supreme Court precedent holds to the contrary.

"When 'the Government obtains information by physically intruding' on persons, houses, papers, or effects, 'a "search" within the original meaning of the Fourth Amendment has 'undoubtedly occurred.'" *Florida v. Jardines*, 569 U.S. 1, 5 (2013) (quoting *Jones*, 565 U.S. at 406-07 n.3). Thus, the Supreme Court held in *United States v. Jones* that physically mounting a Global Positioning System (GPS) tracker on the defendant's car and tracking his movements was a search under the Fourth Amendment. 565 U.S. at 404-11. The Court concluded that placing the tracker on the car was a physical trespass on Jones's vehicle, which was an "effect" under the Fourth Amendment. *Id.*

The Supreme Court rejected an argument similar to the one the Department advances here that "the defendant had 'no "reasonable expectation of privacy"' in his whereabouts on the public roads." *Jardines*, 569 U.S. at 10 (quoting *Jones*, 565 U.S. at 406). It held that "because the GPS receiver had been physically mounted on the defendant's automobile" tracking the vehicle's movements was a search; because the case involved a physical intrusion on the defendant's personal property, the *Katz* expectation of privacy analysis did not control. *Id.* (quoting *Jones*, 565 U.S. at 406).

Highlander's complaint alleges that "Adams physically opened the camera and removed the storage card in order to access the photos on the card." She "then downloaded copies of thousands of photos from Mr. Highlander's camera, stored them on her computer, and . . . review[ed] the photos." By opening Highlander's camera, removing the storage card, and downloading its contents, Adams physically intruded on Highlander's property interest in the camera, and she thus conducted a "search" under the Fourth Amendment and Code § 19.2-59.

*Jones*, 565 U.S. at 404-11; *see Cromartie*, 298 Va. at 299 ("Physically intruding upon or occupying the space of a vehicle for purposes of gathering information is a search.").

"Warrantless searches of private property without proper consent are *per se* unreasonable under the Fourth Amendment, subject only to a few specifically established and well-defined exceptions." *Lugar v. Commonwealth*, 214 Va. 609, 611 (1974); *see Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (consent); *Morris v. Commonwealth*, 208 Va. 331, 334 (1967) (search incident to lawful arrest); *Jones v. Commonwealth*, 279 Va. 665, 672 (2010) (plain view); *Verez v. Commonwealth*, 230 Va. 405, 410 (1985) (exigent circumstances). Under the facts alleged, no exception to the warrant requirement applied to Adams's warrantless search of Highlander's camera. Highlander did not consent to the search, it was not made incident to an arrest, and there were no exigent circumstances. Adams had ample time to obtain a warrant after seizing the camera. Nor does the plain view doctrine advanced by the Commonwealth at oral argument help. That doctrine allows warrantless *seizure* of an item in plain view if its incriminating character is "immediately apparent" and the officer has a lawful right of access to both the place from which the evidence is viewed and the location of the object. *Harris v. Commonwealth*, 241 Va. 146, 152 (1991) (quoting *Horton v. California*, 496 U.S. 128, 136 (1990)). Although we need not decide whether the camera was immediately indicative of criminal activity or whether the agents of the Department had a right to be where the camera was observed despite the many "No Trespassing" signs, we note that the Supreme Court has never held that seizure of a container under the plain view doctrine permits a warrantless search of its contents. To the contrary, when the warrantless seizure of an item is justified by some exception, "the Court has interpreted the Amendment to permit seizure of the property, *pending* issuance of a warrant to examine its contents." *Hurley*, 36 Va. App. at 89 (emphasis added) (quoting *Place*, 462 U.S. at 701); *see United States v. Williams*, 41 F.3d 192, 197 (4th Cir. 1994) ("[A]lthough the plain view

doctrine may support the warrantless seizure of a container believed to contain contraband, any subsequent search of its concealed contents must either be accompanied by a search warrant or justified by one of the exceptions to the warrant requirement."). As alleged in Highlander's complaint, Adams's search of the camera was unreasonable and violated the Fourth Amendment, so Highlander's complaint properly stated a claim under Code § 19.2-59.

Finally, we must determine whether Adams's alleged violation of Highlander's rights exceeded simple negligence, which would defeat her claim of sovereign immunity. *See Cromartie*, 298 Va. at 296-99. An officer's search in violation of an individual's Fourth Amendment rights exceeds simple negligence if the search "was performed contrary to well-established law." *Id.* at 299. To determine whether the law was well-established, we must assess "'whether the state of the law'" when the incident occurred provided "'fair warning'" to Adams that her alleged conduct was unconstitutional.[13] *Id.* at 304 (quoting *Tolan v. Cotton*, 572 U.S. 650, 656 (2014)) (determining whether law was "clearly established" for § 1983 qualified immunity). In this context, "'[c]learly established' means that, at the time of the officer's conduct, the law was "'sufficiently clear" that every "reasonable official would understand that what he is doing"' is unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). In other words, in the light of preexisting law, the unlawfulness of the officer's conduct "must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (citation omitted). Immunity shields an officer who "makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004).

---

[13] We consider federal principles because the test for determining whether the law was well-established for purposes of sovereign immunity under our state law is similar to the federal test for qualified immunity under federal law.

Viewing the facts alleged in the complaint as true, as we must when reviewing the sustaining of a demurrer, we conclude that Adams's alleged search of the camera was contrary to well-established law. Even assuming the Department officers could reasonably, though mistakenly, believed that they were entitled to seize the camera, the law was clearly established that opening the camera and downloading its contents without a warrant was an unlawful search. Opening the camera was a physical intrusion of Highlander's personal property constituting a Fourth Amendment search, and no exception to the warrant requirement applied. *See Jones*, 565 U.S. at 404-11; *Cromartie*, 298 Va. at 299; *Hurley*, 36 Va. App. at 89. These constitutional principles were firmly in place well before Adams searched the camera. Given that both Virginia and United States Supreme Court precedent made the need for a search warrant clear under the circumstances, a reasonable officer should have understood that searching the camera and its contents without a warrant was unlawful. Therefore, under the facts alleged, the search exceeded simple negligence. Under those circumstances, sovereign immunity does not protect Adams,[14] and Highlander stated a claim upon which relief can be granted. *See Jones*, 565 U.S. at 404-11; *Cromartie*, 298 Va. at 299; *Hurley*, 36 Va. App. at 89; *Young-Allen*, 298 Va. at 467. Therefore, the circuit court erred by sustaining the plea in bar and demurrer against Adams for the search of the camera.

---

[14] The complaint alleges that only Adams searched the camera and its contents; thus, we affirm the circuit court's judgment sustaining the demurrer and plea in bar to Highlander's claims against Howlett and Braziel under Code § 19.2-59. Additionally, because only an "officer or person violating" Code § 19.2-59 is liable under the statute and Highlander's complaint did not specifically seek damages from the Department, we affirm the circuit court's judgment sustaining the demurrer and plea in bar to the claim against the Department under Code § 19.2-59. *See Cromartie*, 298 Va. at 296-97 ("The statute creates a cause of action against *law enforcement officers and other government agents*." (emphasis added)).

CONCLUSION

In summary, we hold that the circuit court lacked jurisdiction to consider a claim for a declaratory judgment concerning the Department's alleged practice and policy of warrantless searches and seizures, so we vacate that portion of the circuit court's judgment and dismiss that claim. In addition, the circuit court erred in sustaining Adams's plea in bar and demurrer to Highlander's claim for damages under Code § 19.2-59 and we remand for further proceedings regarding that claim. Finally, because the circuit court properly sustained the plea in bar and demurrer to the remaining claims and defendants, we affirm that portion of the circuit court's judgment.

*Affirmed in part, vacated in part, reversed in part, and remanded.*